·LIVINGSTON *v.* NEW YORK LIFE INSURANCE & TRUST CO. *et al.*

(*Supreme Court, General Term, First Department.* January 16, 1891.)

1. TRUSTS—VALIDITY—CONSIDERATION.
    Plaintiff and his brother, by agreement in writing, conveyed each the sum of $100,000, parcel of a trust fund in which each had an expectant interest dependent upon the life-estate therein of their mother, then living, to the defendant company, in trust to hold the same on such conditions that, in case of the death of either brother, the survivor would be equally benefited by the conveyance. Thereafter, and upon the death of their mother, whereby, according to its terms, the original trust fund became absolutely vested in the brothers, they drew up a ratification of said agreement, and by the same instrument expressly conveyed property of the value of $100,000 to the defendant company upon the trusts set forth in the said agreement. *Held,* that the agreement, though not worded in express terms of mutuality, was a mutual agreement between the brothers, the trust conveyed by one being the consideration for that conveyed by the other.

2. SAME—PERPETUITIES.
    The original trust fund being held by the defendant company, the plaintiff and his brother in their said agreement declared it to be their intention thereby to continue the original trust dependent on their mother's life. On the death of his brother, plaintiff claimed that the agreement was void, as creating a trust for more than two lives in being. *Held,* that the brothers had no power to continue the prior trust created by another person; that the trust created by them was a new and separate trust springing into existence by the instrument executed by them; and that, being therefore dependent on their two lives only, it was valid. Distinguishing *Genet* v. *Hunt,* 113 N. Y. 158, 21 N. E. Rep. 91.

3. RESCISSION OF CONTRACT—MISTAKE—EVIDENCE.
    The trust agreement executed by the two brothers provided that, on the death of either, the $100,000 so conveyed by him should go to the children of the deceased or their heirs *per stirpes,* and, in default of such descendants, the income of said sum was to go to the surviving brother for life, and on his death to be distributed equally among his lineal descendants *per stirpes.* Plaintiff, in this action, claiming that he had never intended such a conveyance, but had instructed the conveyancer to draw the agreement so that the trust fund would vest absolutely in the surviving brother, sought to rescind the trust on the ground of mistake. *Held* that, there being no evidence that the alleged mistake was common to both brothers, and, the deceased brother having fully executed his share of the contract, plaintiff could not be allowed to rescind on the ground of his alleged mistake.

Appeal from special term, New York county.

Action by Lewis H. Livingston against the New York Life Insurance & Trust Company and John McL. Nash, as executor of James B. Livingston, deceased, and others. Defendant the New York Life Insurance & Trust Company appeals from a judgment for plaintiff entered on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Emmet & Robinson,* (*R. E. Robinson,* of counsel,) for appellant. *Vanderpoel, Cuming & Goodwin,* (*Delos McCurdy,* of counsel,) for plaintiff, respondent.

VAN BRUNT, P. J. In the year 1876 the defendant the New York Life Insurance & Trust Company held, as trustee under the will of one James Boggs, certain real and personal property. The beneficiary for life was Julia A. Livingston, the mother of the plaintiff and one James B. Livingston, now deceased. The terms of the trust were, in substance, that it should continue during the joint lives of Julia A. Livingston and Lewis Livingston, her hus-

band. In case Lewis Livingston should die first, then the trust was to cease, and Julia A. Livingston was to take absolutely the whole property. In case Julia A. Livingston should die first, the trust was to cease, and her issue were to take absolutely the whole property. At the time mentioned, both Julia A. Livingston and Lewis Livingston were living; and there were also then living the only issue of said Julia A. Livingston, her two children, the said Lewis H. Livingston and James B. Livingston, now deceased. On the 16th of December, 1876, the said two children, James B. Livingston and Lewis H. Livingston, by an instrument dated on that date, after reciting the judgment fixing the terms of the trust then existing under the Boggs will, and that they were the only children of said Julia A. Livingston, and her only present descendants, and being desirous to continue the aforesaid trust in the New York Life Insurance & Trust Company, as to a part of said property, in case they or either of them should survive the said Julia A. Livingston, and, in the event of the death of the said Julia A. Livingston in the life of her said husband, from and after the death of said Julia A. Livingston, to the extent in said deed particularly set forth, conveyed to the defendant the New York Life Insurance & Trust Company interests in said trust funds in the following language: "That the said James B. Livingston, one of the parties of the first part, doth hereby grant, transfer, and assign to the said New York Life Insurance & Trust Company the sum of $100,000, parcel of the aforesaid trust property, to which he is now or shall hereafter be entitled, according to the terms and conditions of the aforesaid judgment, and now in the possession of said New York Life Ins. & Trust Co., subject to the life-estate of said Julia A. Livingston, and subject to be divested, in the event of the death of said Lewis Livingston, the husband of said Julia A. Livingston, during her life, and subject to the further conditions hereinafter set forth, upon the trusts and conditions as follows: To invest said sum of $100,000, and keep the same invested during the life of said Lewis H. Livingston, Jr.; to receive the income thereof, and pay over the net proceeds of the same to the said Lewis H. Livingston, Jr., during his life, and upon his death to distribute the said sum of $100,000, with its accumulations, if any, equally among the children of said Lewis H. Livingston, and the descendants of his deceased children, *per stirpes.* If the said Lewis H. Livingston die without issue living, then to pay the income to the said James B. Livingston for his life, and upon his death to distribute.the same equally among the children, and the descendants of the deceased children, of said James B. Livingston, in equal shares, *per stirpes.*" The deed then contained a precisely similar grant from Lewis H. Livingston to the trust company of $100,000 for the benefit of James B. Livingston and his issue, if he should die leaving issue, with remainder over to Lewis H. Livingston, Jr., and his children, if James B. Livingston should die without issue.

Thus these two brothers attempted to create a trust which might continue as to some portion of the trust, at least, during their lives. Thereafter, in November, 1884, Julia A. Livingston died leaving her husband, Lewis Livingston, and her said two children, surviving; whereupon the trust under the Boggs will ceased, and the entire property held thereunder vested in her children, subject to the trust above recited, created by the instrument of the 15th of December, 1876. On the 21st of February, 1885, Lewis H. and James B. Livingston and the trust company entered into an agreement dated on that day, whereby certain specific property was set out to make up the respective funds of $100,000, as called for by the instrument of 1876, which instrument contained clauses formally ratifying the trust created by said instrument of 1876, and expressly granted, transferred, and assigned to said trust company the said property, to be held by said company upon the trusts set forth in the deed of December 16, 1876. Thereafter, in October, 1887, James B. Livingston died, leaving a last will and testament, which has been proved, and

letters testamentary thereon granted to one of the executors therein named. By this will, James B. Livingston devised all his estate, after the payment of his debts, to his brother Lewis H. Livingston, and to his heirs, absolutely and forever. This action was brought by the survivor, Lewis H. Livingston, to break the trust, principally upon the ground that the trust was not originally drawn according to the instructions given; and, secondly, upon the ground that the trust attempted to be created was in violation of the provisions of the statute prohibiting the suspension of the absolute ownership of property beyond the term of two lives in being at the date of the instrument containing such limitation or condition. The court held with the defendants upon the first claim, and with the plaintiff upon the second, and from the judgment thereupon entered this appeal is taken.

It is urged in support of the judgment that, as the absolute ownership of the trust-estate was suspended during the life of Julia A. Livingston by the express terms of the instrument under consideration, disability was continued for two additional lives, because by its terms the trust, as made, embraced every existing trust-estate, and continued the same trust, in the same trustee, for the two additional lives. And we are cited to the case of *Genet* v. *Hunt*, 113 N. Y. 158, 21 N. E. Rep. 91, as an authority that such a suspension is void. In determining this claim, it will be necessary to consider for a moment the precise situation of the parties in respect to this particular trust. The foundation of the claim of the plaintiff depends, as far as this point of the case is concerned, upon the fact that the deed of December, 1876, was a continuation of an existing trust. If this was not the fact, then the case of *Genet* v. *Hunt* has no application, and the claim has no foundation. Now, what was the interest of James B. and Lewis H. Livingston in the estate in which their mother had only a life-interest, if she did not survive her husband? The Revised Statutes provide (volume 1, marg. p. 723) that estates, as respects the time of their enjoyment, are divided into estates in possession and estates in expectancy; that an estate in possession is where the owner has an immediate right to the possession of the land, (and it may be said here that these propositions are applicable to personal property,) and that an estate in expectancy is where the right of possession is postponed to a future period. Now, therefore, James B. and Lewis H. Livingston had an estate in expectancy in this property which was involved in the trust created by the Boggs will. The statute then proceeds as follows: "Estates in expectancy are divided into estates commencing at a future day, denominated 'future estates,' and reversions. A future estate is an estate limited to commence at a future day, either without the intervention of a precedent estate, or on the determination by lapse of time or otherwise of a precedent estate created at the same time. A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of a particular estate granted or devised." It will thus be seen that the interest which James B. and Lewis H. Livingston had in this fund was a future estate, it being limited upon the termination of the particular estate during the life-time of their father. The statute further states that "future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent while the person to whom or the event upon which they are limited to take effect remains uncertain." Therefore Julia A. Livingston, under the Boggs will, was not only a life-tenant, but held a contingent future estate, and so did her sons James B. and Lewis H. Livingston hold a contingent future estate in the trust funds. The Revised Statutes, by the provisions to which attention has been called, have thrown under one head all future estates, whether vested or contingent, and whether formerly known as "vested remainders," "contin-

gent remainders," "executory devises," or by any other name. By section 35, the statute provides as follows: "Expectant estates are descendible, devisable, or alienable in the same manner as estates in possession." Therefore the person in whom an expectant estate is vested has the same control over the interest which he thus possesses as though he were in actual possession of the property representing the estate. He may deal with it in precisely the same manner. And this is all that James B. and Lewis H. Livingston did by the deed of trust under consideration.

It is true that they speak of continuing the trust contained in the Boggs will. But they had no power to continue that trust; they could add nothing to that will. Whatever trust they could create sprang into existence by the instrument which they executed. It there had its origin, and it had no relation whatever to the trust created by the Boggs will. It was the complete creation of a trust if the Boggs will had never been mentioned in it, and the mere fact of the mention of that will, and the fact that the settlors have insisted in the instrument that they were going to do a thing which was improper, cannot invalidate that which they legally did. The recital of the instrument does not control. They recited that they were going to continue that trust, which was an inpossibility. All that they did was to create another trust, affecting, it is true, a portion of the same property. But it was in the exercise of the power of alienation conferred upon them by the statute that they executed this trust-deed. There is no question but that, had they the property in possession, they could have created this trust in respect to the same property. Now, as they could alien their estate in the property, although held in trust during the joint lives of their father and mother, precisely the same as though they had it in possession, we fail to see any reason why they might not create a trust in respect to that property. The difficulty about the position of the plaintiff in this respect is that he has confounded the case of the alienation of an expectant estate with a case where the power to act is derived from the instrument which originally created the estate. In the case of *Genet* v. *Hunt* it was held that the exercise of the power derived its validity from the original instrument, and related back to the original instrument. It is the exercise of a power conferred by the original instrument, and therefore whatever is done is deemed to be done by the original instrument. And this all that was decided by that case. The court say that an estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power; that the power of disposition (referring to the facts of that particular case) reserved by Mrs. Riggs in the trust-deed was not an absolute power equivalent to absolute ownership; it was restricted to a disposition by will." In the case cited, the power to act was derived from the instrument creating the trust. In the case at bar the power to act arose from the ownership of the estate, and such ownership was absolute, although it was an expectant estate, because, as already stated, the owner of an expectant estate has as much right to alien as the owner of an estate in possession.

This brings us to the next proposition, viz., that the plaintiff never intended to make a trust of the nature expressed in the written instrument. It is claimed that, if this is the fact, he has a right to maintain this action for a rescission and cancellation of the trust; and the distinction between actions to reform an instrument, and an action to rescind and cancel the same, is called to the attention of the court; and it is urged that the mistake of the plaintiff alone is sufficient ground for its rescission and cancellation. Whatever may be the rule in that regard,—and we express no opinion about it,—in respect to executory contracts, it is certainly not the rule in respect to executed contracts. In the case at bar one of the contracting parties has completely executed his share of the contract. The other party, he being dead, proposes to break the trust upon the statement that the instrument was not of

the character that he intended.   Was it of the character that the other party intended?   There is no pretense but that it was of the character which James B. Livingston intended.   Where is the authority, in the case of a contract of that description, where one party has completely executed it, for the position that the other can rescind and cancel it upon the pretext that he did not intend to make such a contract?   There is only one condition of affairs, as we understand it, which will permit the rescission of a contract under such circumstances, and that is, either the mistake must be common to both parties, or through the mistake of the plaintiff, accompanied by the fraudulent knowledge and procurement of the other party, the written instrument fails to express the real agreement or transaction.   It would be a strange condition of the law to hold that any one party to an agreement, after having received all the possible benefits or chances of benefit from the agreement which the other party could give him, should, because the other party has died, be allowed to rescind and cancel the agreement upon the pretext that he did not intend to execute such a contract.   But it is urged that the trust agreement is not a mutual agreement; that there is no expression of mutuality; that they did not, by the terms of the contract as written, mutually agree nor are they made to say that they were moved by any consideration of that character, and that upon the face of the trust-deed the creation of the trust was the voluntary act of each.   Upon a reading of this instrument, it bears every evidence of mutuality.   It is true that they did not, in express terms, say that they mutually agreed, but it is just as apparent that the one trust depended upon the other. It needs no argument to show that Lewis H. Livingston would not have made the trust which he did if James B. Livingston had not made the trust which he did.   One was the consideration for the other, and therefore it was not merely the voluntary act of each.   The consideration ran from each to the other.   We are cited to a long list of authorities going to show that a court of equity will, at the request of the settlor, set aside and cancel a deed of trust, unless it is proved to be the voluntary, intended, and well-understood act of the settlor.   These authorities have no application to the case at bar. This instrument was not unilateral.   It was a mutual agreement between James B. and Lewis H. Livingston.   The creation of the one trust was dependent upon the creation of the other, and, as already stated, after Lewis H. Livingston has obtained all the benefits of this trust, to allow him to break it because James B. Livingston is dead—and, as a will has been made in his favor, he runs no danger in so doing—would seem to violate every principle of law.   We have not considered it necessary to discuss at length the many authorities cited, to show that a voluntary deed of trust may, under certain circumstances, be recalled by the settlor.   But this agreement, being between two parties, is to be so construed that it protects the rights of each.   We think that, if James B. Livingston had made a will leaving his property in another direction, the plaintiff would never have brought this action to set aside this trust; he never would have dreamed that that instrument did not express the true intent of the parties; and we think that the learned judge in the court below was right when he decided, as matter of fact, that Lewis H. Livingston had established no such proposition.   In fact, it is doubtful whether the evidence introduced by Lewis H. Livingston, for the purpose of showing what he understood, was at all admissible.   James B. Livingston, the other party, was dead.   The testimony of Lewis is that he and his brother went to the lawyer, who is also dead, to have this trust-deed executed, and that he told the lawyer what his brother and himself wanted, and the instrument was drawn, read over to him, and executed.   Now, is not that giving evidence of a transaction between himself and his deceased brother? It seems to be so.   It is certainly within the evils arrived at by the prohibition of the Code.   But, even if the finding of the learned court in this respect cannot be sustained,—which we do not for a moment admit,—there was

subsequently, and after the death of Julia A. Livingston, a ratification of this deed, or, if the acts done did not amount to a ratification, a creation of the trust. We are cited to a large number of authorities, every one of which is to the effect that a principal cannot ratify the acts of his agent, unless he knows what his agent has done. That seems to be elementary law, and to be involved in the very act of ratification. It may be claimed that the case of *Adair* v. *Brimmer*, 74 N. Y. 539, does not fall within that category. But it clearly does. In that case it is held that, where a trustee seeks to avail himself of the ratification by a *cestui que trust*, he must show that the *cestui que trust* was fully acquainted with the facts. In addition, there is another principle applicable to that case, and that is, in dealings between a trustee and a *cestui que trust*, they are presumably fraudulent, and the trustee must justify them, which he can only do by showing that his *cestui que trust* was fully advised. After the death of Julia A. Livingston, Lewis H. and James B. Livingston, both knowing what they had done, expressly ratified it, and set apart the property to be conveyed to the trustee, and not only ratified, but, in order that there should be no mistake about it, if there was no act to ratify, they made a new conveyance to the trustee of the property to be held upon the trusts named in the original instrument; and yet, again, Lewis H. Livingston is doing something he did not intend to do. It seems to be difficult to see how it was possible for these men to make a stronger declaration of trust than they have done by these proceedings. It is not necessary to cite authorities to show that the terms of a trust may be contained in an instrument separate from the deed creating the trust. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.