NEW YORK LIFE INSURANCE & TRUST CO. v. HOYT et al.

(Supreme Court, Appellate Division, First Department. June 17, 1898.)

TRUST DEED—CONSTRUCTION—BENEFICIARIES.

A person having a contingent future estate in certain real and personal property, then held in trust for another, transferred to the same trustee $100,000, being a part thereof, to hold upon another trust, the sum conveyed to be ultimately distributed among his "next of kin, according to the statute of distributions of the state of New York." Subsequently, after becoming absolutely entitled to the property, he executed a conveyance of specific portions thereof, part realty and part personalty, to the trustee, to constitute the trust estate, upon the trust previously created by him. *Held*, in an action involving the construction of the trust, that his next of kin, and not his heirs, were alone entitled to share in the ultimate distribution.

Appeal from judgment on report of referee.

Action by the New York Life Insurance & Trust Company against Henry S. Hoyt and others. From a judgment on report of referee, Mary R. De Courval appeals. Affirmed.

Argued before PATTERSON, RUMSEY, O'BRIEN, and INGRA-
HAM, JJ.

Edmund L. Bayliss, for appellant.
John L. Cadwalader, for respondents.

O'BRIEN, J.   The object of this action is to enable the plaintiff
to distribute certain funds in its hands as trustee under two similar
trusts created by Lewis H. Livingston and James B. Livingston.
The validity of the trusts, which were created by deeds, was involved
in the action of Livingston v. Trust Co. (Sup.) 13 N. Y. Supp. 105,
wherein we find a sufficient summary of the trust deeds, together with
a construction of their provisions, which renders unnecessary any
further recital of facts than such as bears directly upon the question
here at issue.

Julia A. Livingston, the mother of James B. and Lewis H. Livings-
ton, had, under the power given to her in the will of her father, James
Boggs, created, by an antenuptial settlement, a trust in certain
property, both real and personal, in which her sons had an expectant
future estate.   By the trust thus created, Julia A. Livingston had a
life interest in such trust property.   During her life, and before the
expectant future estate of her sons had ripened in possession, they
executed a deed, dated December 16, 1876, whereby each of them,
after referring to the trust created by their mother of certain property
of which on her death they would be the beneficiaries, transferred
to the same trustee, this plaintiff, the sum of $100,000, being a part of
the trust property in which they had such expectant interest, in trust,
to pay the income to the settlors in each, and to the survivor, with re-
mainders to their issue in each case, and, in default of issue, to the
next of kin of the survivor of them.   On the death of their mother,
when they became entitled to such estate in possession under her
trust, they executed a further instrument, under date of February
21, 1885, ratifying and confirming the original trust instrument, and
setting apart certain particular property to constitute the $100,000,
in each case to be held upon the trust set out in the instrument of
December, 1876.   The language creating the trust, employed by both
James B. and Lewis H. Livingston in the deed of 1876, is as follows:

"That the said * * * doth hereby grant, transfer, and assign to the said
the New York Life Insurance & Trust Company the sum of one hundred thou-
sand dollars, parcel of the aforesaid trust property, to which he is now or
shall hereafter be entitled, according to the terms and conditions of the afore-
said judgment, and now in the possession of the New York Life Insurance &
Trust Company, subject to the life estate of the said Julia A. Livingston, and
subject to be devested in the event of the death of the said Lewis Livingston,
the husband of the said Julia A., during her life," etc.

The instrument then makes provision as to the disposition of the
fund in the event of the grantors dying with or without issue, and
concludes as follows:

"And the parties of the first part further declare that if neither the said
James B. Livingston nor the said Lewis H. Livingston, Jr., leave lineal descend-
ants, then, upon the death of the survivor of them, the parties of the second
part shall distribute both of the sums hereby conveyed in trust among the next

of kin of the parties of the first part, according to the statute of distributions of the state of New York."

Both having died without leaving lineal descendants, the question presented is as to the disposition to be made of the trust fund. If we had recourse alone to the language employed, directing that it be distributed "among the next of kin   *   *   * according to the statute of distributions of the state of New York," no difficulty would be presented. The appellant here, who is the heir at law, and not the next of kin, insists, however, that, taking the two instruments of 1876 and 1885 together, an ambiguity is created; and that it appearing that the fund, when finally designated by the instrument of 1885, and which was delivered to the trustee, consisted of both real and personal property, she is entitled, as the heir at law, to succeed to the real estate which was included in the trust fund, while the personal property may go to the next of kin.

It appears that the original trust fund to which the sons, after the death of their mother, succeeded, consisted of both real and personal property; and the question which presents itself at the beginning is whether the sons intended to create a trust in personalty and realty or in personalty alone. This necessarily depends upon the construction to be given to the language used in the instrument of December, 1876, because we assume it will be conceded that, if a trust in personalty was then created in explicit language, it could not thereafter be varied or altered, even by the agreement of February, 1885. Were it not for the use of the word "grant," which is technically applicable to real estate, the other language used, including that which speaks of the trust fund as the "sum of one hundred thousand dollars," would make it clear beyond cavil that what the sons assumed to do was to create a trust in personal property. It is true no specific property was mentioned, or could be mentioned, by the sons in 1876, because that property might not be in existence at the death of their mother; nor could it with certainty be determined of what the trust created by Mrs. Livingston would ultimately consist. It would be giving unusual force to the single word "grant" to hold that it was controlling as expressive of intent, as against all the other language employed by the creators of the trust. So, too, with respect to the argument based on the relationship between the Livingstons and the appellant, which, while that of first cousins, is described as having been "more like brothers and sisters," such considerations can only be resorted to in cases of doubt and ambiguity.

If we reach the conclusion, therefore, which we think must be reached by a fair reading of the instrument of 1876, that what was created was a trust solely in personal property, then it is clear that it could not be varied or affected by the instrument of 1885. It is true that by this latter instrument specific property was designated, consisting, as it did, of both real and personal property; and there is force in the suggestion that the plaintiff, in the discharge of its duty as trustee, could well have required the payment to it of a sum in cash which would put it in possession of the $100,000 fixed as the trust fund. In lieu thereof, the trustee deemed it proper to accept, at a fixed valuation, a portion of that fund in real estate, and we

do not understand that on this appeal any question is made as to the good faith or good judgment involved in the acceptance by the trustee of property which was then in the possession of the creators of the trust, and which they turned over in its then form in preference to selling or converting the real estate so as to provide a fund which should consist entirely of personalty. It requires no citation of authorities to show, because it is consonant with reason, that, in appropriating specific property for the purpose of fulfilling the conditions of a trust in personalty, the placing of real estate in such a trust fund could not change the nature of the trust or affect the devolution of title. It would destroy the security of all trusts if a trust in real estate could be converted into one in personalty, or vice versa, by the action of the trustee, or any other person, in accepting or investing in property of a character different from that of which the trust should consist. Thus, we do not think it would be argued that if the trustee here, with the assent of the cestui que trust, had invested all the personal property in real estate, the character or nature of the trust would thereby be affected. So, if one were appointed a trustee of personal property solely, as here, and for the purpose of supplying the fund to constitute that trust estate should accept a delivery of some real estate, it would not from that follow that the character of the trust had been changed, and that those entitled to share in the trust estate, regarded as one consisting of personalty, were to be deprived of it solely upon the ground of the failure of the trustee to receive, or to invest in, or to retain, property of the same character as the trust itself. The effect of having some real estate as part of the trust fund of a trust in personal property only would be to regard such real estate, under the doctrine of equitable conversion, as personal property.

In 3 Pom. Eq. Jur. § 1159, note 1, the following quotation appears:

"In Lechmere v. Earl of Carlisle, 3 P. Wms. 211, 215, Sir Joseph Jekyll said: 'The forbearance of the trustees in not doing what it was their office to have done shall in no sort prejudice the cestuis que trustent, since, at that rate, it would be in the power of the trustees, either by doing or delaying to do their duty, to affect the right of other persons; which can never be maintained. Wherefore the rule in all such cases is that what ought to have been done shall be taken as done; and a rule so powerful it is as to alter the very nature of things,—to make money land, and, on the contrary, to turn land into money. Thus, money articled to be laid out in land shall be taken as land and descend to the heir; and, on the other hand, land agreed to be sold shall be considered to be personal estate.' "

Here it was the trustee's duty to execute a trust in personalty, and without discussing the propriety of accepting some real property, in lieu of a fund in personalty which should constitute the trust estate, it is sufficient to say that this action of the trustee cannot be held in any way to have affected or destroyed the rights of those who were entitled to succeed to the trust estate. To this proposition the appellant yields assent, because much of the argument on her behalf is directed to show that an ambiguity exists in the trust deeds, and that the fund in question is a mixed fund of real and personal estate. The fallacy of this argument is in regarding the deed of 1885

as controlling as to the terms of the trust, because by that deed the special designation was made of the property which was delivered to the trustee to constitute such trust fund. The trust, however, was created by the deed of 1878; and the appellant is in error in the view that in the action to which we have already referred, involving the validity of the trust, the trust instrument of 1876 was held not to create a complete trust. The court did not therein decide that the instruments of 1876 and 1885 together created a trust, or that the latter created a new or different trust from that contained in the former; and we think that a reading of the opinion in that case will show that it was not intended to hold that by the language in the deed of 1885 any change was intended, or that it made what was clear ambiguous. Even if it did, it would be ineffectual for that purpose, for the reason, already stated, that it was beyond the power of the parties to alter or change the trust.

No doubt cases can be found in this state and country, and more particularly in England, where, for the purpose of effectuating the intention of a testator or a grantor in a deed or instrument in writing, the word "heir," when employed, has been held to mean "next of kin," and "next of kin" has been held to mean "heir"; but we find no case in this state which has gone to the extent of holding that where there is no ambiguity in the language employed, and where the person employing the language intends to create a fund in personal property, and then provides, further, that in the disposition of that property it shall go to the next of kin, according to the statute of distributions of the state of New York,—showing that there was an intention to remove all doubt, so as to exclude heirs and those who, under the law of descent, would have succeeded to the property,—the words "next of kin," as thus employed, meant "heirs." Where, as here, the intention of the grantors is so clearly expressed, there is no room for construction; for conceding, what the appellant argues for, that this was a mixed fund of real and personal estate, there is not the slightest doubt but that it was the intention of the grantors that those who should succeed to the ultimate remainder in the property were the next of kin, and not the heirs, as to the realty, and the next of kin as to the personal property. It would be difficult to find language which would more clearly express the intent than that here used,—that it was for the next of kin according to the statute of distributions; thus, by express language, excluding heirs, who would take under the statute of descent. And that the words "next of kin" were understood by at least one of the grantors in their proper legal meaning is evident from the complaint in the action brought by Lewis H. Livingston, wherein, among other things, he alleged that certain defendants, naming them, "are his only next of kin who under the statute of distributions in the state of New York are entitled to claim interest in the said trust property." In this enumeration of the persons who were to take, the appellant, who is his heir at law, was not mentioned.

There are many other arguments advanced by the appellant; but, as most of them have been disposed of by the learned referee, it is

unnecessary for us to discuss them, deeming, as we do, that the question here presented, which, when finally reduced, is within a very narrow compass, can be disposed of by a brief consideration. What the appellant contends for is that, although the deed of trust makes a disposition of the fund to the next of kin according to the statute of distributions, the fund itself, consisting of real and personal property, is to be disposed of by construing the deeds as giving the right to the real estate to the heirs at law and the personalty to the next of kin. If we start, however, with the consideration which we have endeavored to point out, that the trust created by the deed of 1876 was one of personalty, then it would be beyond the power of the trustee or the parties to vary the trust or change the individuals who would ultimately be entitled to take the property; and the acceptance of certain real estate at a fixed valuation, in lieu of the sum of $100,000 which was to constitute the trust fund, could not change the devolution of title, or divert the trust fund from those who were designated as beneficiaries. Furthermore, if the fund be regarded as a mixed one, then, having in mind the language used by the grantors as to the ultimate disposition to be made of the fund in remainder, there cannot be the slightest question as to the persons to whom it was intended it should go, viz. "to the next of kin according to the statute of distributions," which excludes the idea that any part of the trust fund was to go to heirs according to the law of descent.

We think, therefore, that the judgment was right, and should be affirmed, with costs.

INGRAHAM, J. I concur with Mr. Justice O'BRIEN in the affirmance of this judgment. By the instrument dated December 16, 1876, James B. Livingston and Lewis H. Livingston attempted to transfer certain property in which they had a vested remainder upon a specified trust. That instrument recited that the New York Life Insurance & Trust Company, the plaintiff in this action, was in possession of certain real and personal estate, as trustee, to which the grantors would be entitled upon the death of their mother, Julia A. Livingston, her husband surviving; that such property consists of estate, real and personal; that each of the parties of the first part grants, transfers, and assigns to the party of the second part "the sum of one hundred thousand dollars, parcel of the aforesaid trust property, to which he is now or shall hereafter be entitled, * * * upon the trusts and conditions as follows." Thus, there was attempted to be transferred to the plaintiff, as trustee, the sum of $100,000, parcel of the trust property before recited in the agreement, which was stated to be real and personal estate. There is no provision made in this deed for a sale of any of the property from which this trust estate was to be created, so that this sum of $100,000 could be realized, and it seems to me that the legal intendment of this clause was that a sufficient portion of the trust property to which each of the parties of the first part would be entitled was to be set apart and held by it under the trust provided for by the instrument. If such property so set apart should be personal property, it would

continue personal property in the hands of the trustee. If such property so set apart should be real estate, it would continue real estate in the hands of the trustee. The words used were sufficient either to transfer the title to personal or to real estate. To constitute this trust, it was not necessary, nor does it seem to have been contemplated, that any real estate constituting a part of the trust estate, or any real estate constituting a part of the estate which was to come to the parties of the first part upon the termination of the then existing life estate, should be sold, so that a sum of money could be received by the party of the second part to this instrument; but what was to be received by the party of the second part, as trustee under this instrument, was a parcel of the trust property to which each of the parties of the first part would be entitled, which would be of the value of $100,000. This instrument then provided that in the event of the parties of the first part, or the survivor of them, dying without leaving lineal descendants, the trustee should "distribute both of the sums hereby conveyed in trust among the next of kin of the parties of the first part, according to the statute of distributions of the state of New York."

Now, whether the trust estate consisted of real or personal estate, this declaration is clear and unambiguous. By it the trustee was directed to distribute the property held by it in trust among a class named. To accomplish such a distribution, it was necessary that the trust property, whether real or personal, should be sold; and thus there would be an implied power of sale vested in the trustee for the purpose of distribution, both as to real and personal property. I do not agree with the referee that the addition of the words, "according to the statute of distributions of the state of New York," is immaterial. It seems to me that they are material, as taking the case out of the line of authorities cited by the referee, and relied upon by counsel for the appellant, which hold that, where there is a direction that property should go to the next of kin, where the property was real estate, it was the evident intention of the testator or grantor that the property should follow the course which it would follow in case of intestacy. But where a grantor, as in this case, directs a distribution of a trust estate which included both real and personal property, and which would require a sale of the real estate to make such a distribution, and provides that the parties among whom the trust estate should be distributed are those provided for by the statute named as the persons who would be the next of kin of the grantor, or creator of the trust, it seems to me that he has then definitely designated a class among whom the trusts of the trust estate are to be distributed,—a class which is capable of being definitely ascertained by a simple reference to the statute referred to, and which no court would be justified in setting aside in favor of another class, designated in another statute, as those who would be the heirs at law of the creator of the trust. No ambiguity exists. No construction which gives to the words used by the grantors other than their plain and ordinary legal significance is necessary to carry the instrument into effect. It might be that the grantors did not have in mind, at the time of the execution of this agreement, the

fact that their next of kin and heirs at law might be different. Of that we know nothing. What we have to do is to consider the language used in this instrument, which clearly and unambiguously designates a class capable of definite ascertainment as those among whom this trust fund should be distributed, and it seems to me that we are bound to give that clear and expressed intention effect.

By the instrument of 1885, after the grantors had become vested with the estate in fee, they executed the second instrument, which recited that they had now become entitled to the property which was recited in the instrument of 1876, specifying the particular pieces of property, real and personal; and the grantors then proceeded to confirm the trust deed of December 16, 1876, and set apart the securities to be retained by the trustee for the purpose of the said trust. The instrument then proceeded as follows: "And we do hereby severally sell, assign, transfer, and convey to the said the New York Life Insurance & Trust Company all our respective right and interest in the said securities and property so retained and designated, to be held by the said company upon the said trust set forth in the said deed of trust." By the express terms of this agreement, acting as a present conveyance, the grantors conveyed to the trustee the security and property which was to be held by the said company upon the trust set forth in the deed of trust of 1876. Whether or not the former instrument was sufficient to vest a title to the property described in it, or any portion of such property in the trustee, it is not necessary to determine; for by this instrument of 1885 there was a transfer of definite property to the trustee, and that transfer was, by the express terms of the instrument, upon the trust set forth in this deed of trust of 1876. Under this conveyance of 1885, the plaintiff held as trustee, and the title under the statute vested in it as trustee; but for the terms of the trust it was necessary to look to the instrument of 1876, which was executory in its character, but which clearly defined the trust upon which this property was to be held by the trustee when title to it should be received. The plaintiff, therefore, held this specific real and personal property conveyed to it by the grantors upon the trust specified in the deed of 1876, and that trust required them, upon the death of the two grantors without issue, to distribute the trust property among those who were the next of kin of the grantors, according to the statute of distributions of the state of New York.

I think, therefore, the judgment was right, and should be affirmed, with costs.

PATTERSON and RUMSEY, JJ., concur.