(120 App. Div. 264)

### NEW YORK LIFE INS. & TRUST CO. v. CARY et al.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

1. PERPETUITIES—SUSPENSION OF THE POWER OF ALIENATION.

B. executed and delivered to plaintiff a trust instrument, whereby it was directed to hold certain personal property during the lifetime of his daughter N., to pay the income to her as long as she lived, and at her death to pay the principal to her issue, if she left any, otherwise it was to revert to B. or his estate. B. retained such power of revocation, substitution, and control of the trust fund during his lifetime, that it did not become effective until his death. By his will, after certain devises to his wife and his daughter N., B. directed that his residuary estate should be divided into three equal parts, each part to be held in trust for the benefit of his wife during her lifetime, and, on her death, one part was to continue to be held for the lifetime of his daughter N., one for the lifetime of his daughter F., and one for the lifetime of his son A., and, upon the death of each child after the death of the wife, the share held for each child was to be divided between his or her issue. B. died before his daughter N. *Held,* that the effect of the trust deed and the will was to suspend the absolute ownership of the trust fund for the lifetime of the daughter N., for the lifetime of the wife, and during the lifetime of one of the other children which was a disposition in contravention of the personal property law; section 2 (Laws 1897, p. 507, c. 417) providing that the absolute ownership of personal property shall not be suspended during more than two lives in being.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, § 48.]

2. WILLS—TRUST DEED—CONSTRUING INSTRUMENTS TOGETHER—CONVEYANCES SUBSEQUENT TO WILL.

Where a trust deed became effective on the death of the creator of the trust, and affected the same fund as his will, the two instruments will be read together as indicating a general scheme of the disposition of his estate though they were not executed at the same time, or though it may have been probable when the deed was executed that the trust fund would not be affected by the will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 996.]

3. SAME—LIMITATIONS OVER.

    A trust deed and a will were to be read together as constituting parts of a single scheme of disposition. The trust directed that the income from the trust fund be paid to the testator's daughter during her life, and, if she died without issue, the principal was to revert to his estate. She died after the testator, and left no issue. The will provided that the testator's widow should enjoy the whole income from his residuary estate during her lifetime, and then the principal should be held in trust for the benefit of his two children. *Held*, that the will should be carried out so far as concerns the trust for the benefit of the widow since this disposition was valid, and only the subsequent trusts for the benefit of the children should be declared invalid, and that, as to the remainder in the trust fund after the death of the widow, the testator died intestate.

Patterson, P. J., and Houghton, J., dissenting.

    Appeal from Special Term.
    Action by the New York Life Insurance & Trust Company against Hamilton W. Cary and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.
    Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and HOUGHTON, JJ.

    Richard L. Sweezy, for appellant Bostwick.
    Egerton L. Winthrop, Jr., for appellant Francis.
    W. P. Williams, for appellant Cary.
    W. T. Emmet, for respondent N. Y. Life & Trust Co.
    W. B. Chamberlin, for respondent Helen C. Bostwick.
    G. E. Buckingham, guardian ad litem, for infant respondents.
    George L. Shearer, for respondent U. S. Trust Co.
    James F. Horan, for respondent Farmers' Loan & Trust Company.
    Frank L. Polk, guardian ad litem, for infant respondents, Carstairs and Francis.

    SCOTT, J. On January 13, 1892, Jabez A. Bostwick, then a resident of the city of New York, executed and delivered to the New York Life Insurance & Trust Company a certain trust instrument, whereby he undertook to make provision for his daughter Nellie Bostwick Morrell, then the wife of Francis L. Morrell. The subject of the trust was personal property. The trustee was directed to hold the property during the lifetime of said Nellie Bostwick Morrell, paying the income to her so long as she lived, and at her death distributing and paying over the principal to her issue, if she left any. If, however, said Nellie Bostwick Morrell should die without leaving issue her surviving, the trust property was to revert to and be paid over to the creator of the trust or his estate. On November 8, 1890, the said Jabez A. Bostwick had made a will, whereby, after certain devises to his wife and his daughter Nellie, he directed that his residuary estate should be divided into three equal parts, each part to be held in trust for the benefit of his wife Helen C. Bostwick during her lifetime. Upon the death of the testator's wife one part was to continue to be held by the trustee for the lifetime of Nellie Bostwick Morrell, one part to continue to be held for the lifetime of Fannie E. Bostwick, a daughter, and one part to continue to be held for the lifetime of Albert C. Bostwick, a son, except that, when the latter

arrived at full age (or upon his mother's death if he had theretofore become of age), one-half of the share set apart for said son was to be paid over to him absolutely. Upon the death of each child, after the death of Mrs. Bostwick, the share held for such child was directed to be divided between his or her issue. The clear effect of the trust was to leave in Jabez A. Bostwick, the creator of the trust, an expectant estate in the reversion of the trust fund, which, at his death, constituted a part of his residuary estate, and the effect of the trust deed and the will, if read together, was to suspend the absolute ownership of the personal property constituting the trust fund, first, for the lifetime of Nellie Bostwick Morrell; second, for the lifetime of Mrs. Helen C. Bostwick; and third, as to a portion of it at least during the lifetime of one or other of the children of Jabez A. Bostwick. Such a result would occur only if, as in fact did happen, Jabez A. Bostwick should die before his daughter Nellie Bostwick Morrell; for, if the latter had died before her father, the fund would have reverted to him and become his absolute property. Jabez A. Bostwick died in August, 1892. Francis L. Morrell, the husband of Nellie B. Morrell, died in May, 1893, and Nellie B. Morrell (then Nellie B. Cary) died in January, 1906, leaving no children or descendants. The question involved is whether the disposition of the property constituting the trust fund, by the two instruments above referred to, contravened the provisions of section 2 of the personal property law which provides as follows (Laws 1897, p. 507, c. 417):

"The absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition, or if such instrument be a will, for not more than two lives in being at the death of the testator."

The respondents argue, and the court below held with them, that the trust deed and the will are not to be read together, but separately, as two distinct and unrelated instruments, neither of which by itself created an unlawful suspension of the absolute ownership of the personal property in question. They insist that the fact that Nellie B. Morrell outlived her father, and then died without issue, was a mere "chance happening," not contemplated when either instrument was executed, and having no bearing upon the validity of either instrument. Support for this position is sought to be found in Livingston v. N. Y. Life & Trust Company, 13 N. Y. Supp. 105, 59 Hun, 622. In that case two brothers named Livingston owned estates in expectancy in the reversion of a certain fund by a trustee for the benefit of their mother during the joint lives of herself and her husband. They executed a trust deed to the same trustee as then held the fund, expressing their desire to continue the trust and conveying to the trustee their expectant estates in the fund upon terms which, at least as to part of the fund, involved the suspension of the absolute ownership during the lives of both of them. The General Term of this department held that, inasmuch as expectant estates are expressly made alienable, the brothers had a right to dispose as they did of their estates in expectancy, and that their power of disposition was not limited by the fact that the property would have been, when the ex-

pectancy was realized, already tied up, by the act of another, for two lives. If the facts in the present case were parallel to those in the Livingston Case, we should find no difficulty in following it, and might do so if Bostwick, although both the creator of the trust and the maker of the will, had before his death made an effectual and absolute gift of the property to the trustee so as to retain no interest in it, except the expectancy of a reversion contingent upon the death of his daughter without issue.

The trust deed, although expressed in the present tense, and accompanied by a delivery or deposit of the subject of the trust with the trustee, contained the broadest possible powers of revocation, substitution, and control by the creator of the trust during his lifetime, reserving to him such dominion over the property as to lead this court and the Court of Appeals to hold (in a transfer tax case) that the gift to the trustee did not become effective and was not intended to become effective until the death of the creator of the trust. Matter of Bostwick, 38 App. Div. 223, 56 N. Y. Supp. 495; Id., 160 N. Y. 489, 55 N. E. 208. The result is that there went into effect at the same moment a deed of trust and a will executed by the same person and affecting the same fund; the effect of the two instruments taken together being to tie up the fund for a longer period than permitted by law. Under these circumstances, we consider that the two instruments must be read together as indicating the general scheme of the disposition of his estate intended by the testator. The fact that the deed and will were executed at different dates, or that the will was executed first, does not affect the question, since they both speak from the same moment, to wit, the death of Mr. Bostwick. Nor is it of consequence that it may have been probable, when the deed was executed, that Mrs. Morrell would have children. The rule for testing the validity or invalidity of a provision for the suspension of the power of alienation of real estate is not what has actually happened, or what was expected to happen, but what might have happened (Herzog v. Title Guarantee & Trust Company, 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146), and the same rule applies to provisions suspending the absolute ownership of personal property. As the trust deed and will are to be read together as constituting parts of a single scheme of disposition, we must, as far as possible, give effect to both, as if both were contained in a single instrument. It was perfectly valid and lawful for Mr. Bostwick to so dispose of the fund that its absolute ownership would be suspended for two lives, and, as it was the clear purpose of his will that his widow should enjoy the whole income from his residuary estate during her lifetime, that intention will be carried out by sustaining the will so far as concerns the trust for the benefit of Mrs. Bostwick during her lifetime, declaring invalid only the subsequent trusts for the benefit of his children, and holding that so far as concerns the remainder in the trust fund, after the death of Mrs. Bostwick, the testator died intestate.

The judgment will be modified accordingly, and, as modified, affirmed, with costs in this court to all parties separately appearing payable out of the fund.

McLAUGHLIN and LAUGHLIN, JJ., concur.

HOUGHTON, J. (dissenting).   I think the judgment rendered below is right, and should be affirmed without modification.

Whether the trust deed and the will be construed as one instrument or not, there is no violation of the statute as to one-third of the 1,000 shares of Standard Oil stock placed in trust by the deed for the daughter Nellie during her life.  By the will the residue of the testator's estate is divided into three separate parts, and one part is given to the wife for life and on her death to Nellie for life, then to the latter's issue or next of kin.   Nellie having died without issue, the stock placed in trust for her, by the terms of the deed, passed to the testator's estate and swelled the residue.   As to the one-third thus carved out for the wife and Nellie for the life of each, no more than two lives are involved.   The fact that Nellie was given a life estate by the deed and another by the will after the wife should die did not constitute a provision for a third life.   Nellie had only one life, and it is of no moment how many instruments she is mentioned in as taking a life estate in the same property, for she could take but one any way.   Even if the deed and will be construed together, only the two lives of the wife and Nellie are involved in the first one-third part disposed of by the first subdivision of the fourth paragraph of the will.   Nellie having died without issue, her next of kin, therefore, on the death of the wife, will take under the will of the testator, and not because of her own intestacy.   I see no possible reason for saying that there is not a valid disposition under the will of this one-third part, and it should be held by the executors and trustees and finally distributed as the will provides.   As to the other two-thirds, there is more room for question, but I am of the opinion that the will should be read alone, and that the trust deed should not be grafted upon it.   The court below did not find, and from any facts disclosed could not have found, as a fact that the deed and will were executed in pursuance of one general scheme to evade the statute and to tie up personal property for more than two lives in being.   The will was executed in 1890 and the deed in 1892.   Standing alone, the deed is valid and the will is valid, and neither offends the statute.   It is only by assuming that they must be read together, and that the property disposed of by both passed only at Mr. Bostwick's death by virtue of the two instruments, that any offense against the statute can be found.   It is true that Mr. Bostwick reserved power in the deed to terminate the trust and to change and supervise its investment; but he never did revoke it.   The fact that he had the power to do so as long as he lived did not make the trust effective only when he should die.   It was valid and effective when he created it, and continued to be so, unless he chose to destroy it.   It was not given life by his death.   That event only took away the power to destroy it.   In a sense it became absolute only when the power to destroy it was gone; but, that power never having been exercised, its validity and the passing of the property and rights by it depended upon what was done at its execution and upon the terms contained in it.

Counsel for appellants do not contend that Matter of Bostwick, 160 N. Y. 489, 55 N. E. 208, is decisive of the question now involved, and it does not seem to me that it is, although I confess to some embar-

rassment because of it. The question there under review was whether a transfer tax could be imposed on the property passing by this trust deed. The transfer tax law in force at the time of the testator's death (Laws 1892, c. 399, p. 815, § 1, subd. 3) provides for the imposition of a tax upon a transfer of property when it was made in contemplation of death, or intended to take effect in "possession or enjoyment" at or after such death. It was determined that the creator of the trust retained such dominion over the fund that its possession and enjoyment did not become absolute in a taxable sense until his death, when the power to revoke ceased. That a tax may have been properly imposed under the peculiar provisions of the transfer tax law does not compel the conclusion that the trust deed must be ingrafted upon the will for the purpose of making the will invalid. The trust deed provided that, in case Nellie should die without issue, the fund should revert to testator or his estate. As the event happened, the residuary estate of the testator was augmented from the termination of the trust by such death. If Nellie had died an hour before the testator, I apprehend there could have been no question that he could have given in trust for two lives the exact fund which. had been held in trust for her. The fact that the fund had been once tied up would not prevent its being again suspended in absolute ownership for the prescribed two lives. Nor is there any difference from the fact that she lived several years, and it then fell into the residuary estate of the testator and under the operation of his will. Unless the deed and will must of necessity be read together, there is nothing in the fact that the fund came to. the testator's estate from the termination of a former trust, even though such trust was created by himself, which renders the provisions of the will void. The testator had the right to will such an expectant estate contingently vested in himself, and he was not prevented from so doing because it had been held in trust for one life or two, and he could by his own will dispose of it in trust to the limit of the law.

I do not think the two instruments must or should be read together, and I therefore vote for an affirmance of the judgment.

PATTERSON, P. J., concurs.

