Fuchsberg, J.
On December 28, 1961, Abbey E. Gilbert, as grantor, created an irrevocable trust of personal property consisting of named securities. He did so by executing an instrument denominated simply as a "Trust Indenture”. It provided that Elizabeth M. Guenther, to whom it recited the grantor had been married in Mexico in 1957, was to receive its net income quarterly during her lifetime but, if she died within a 10-year period, the trust was nevertheless to continue for the balance of the 10 years, during which the net income was to be paid to the grantor’s three children. The term of the trust was, therefore, for 10 years or the life of Elizabeth, whichever was longer. At its termination, the corpus, together with accrued and undistributed income, was to be paid to grantor, if living, or, if he were not living, to the three children. Elizabeth’s written consent, acknowledged in the manner required by the laws of this State for the recording of a conveyance of real property, was affixed to that instrument.
That trust indenture further provided that unspecified additions, purely on a voluntary basis, could be made to its corpus, in which event the trustees, of whom the grantor was one, would receive and hold the additional property and dispose of it "in the same manner as herein provided” with respect to the orginal trust principal.
Only 11 days later, on January 8, 1962, the grantor executed a second instrument, this one entitled "Addendum”, by the terms of which he conveyed to the same trustees identical amounts of the same securities which he had transferred to *666 the trustees under the instrument of December 28, 1961. The second instrument, which bore no signed consent by Elizabeth, stated that the term for which the securities it listed were to be held was "for a period of ten years from the date of this Addendum * * * and not longer” and "subject otherwise to all terms and conditions” of the instrument dated December 28. It contained no reference to the life of Elizabeth. It also stated that "this Addendum further extends the Indenture * * * to ten (10) years from the date hereof’.
Abbey E. Gilbert died on March 15, 1964. In 1973, the three children, petitioning that the "addendum” be construed to terminate on January 8, 1972, 10 years after its date, brought on this proceeding under CPLR article 77. Elizabeth opposed that construction, taking the position that the corpus of the "addendum” should be treated as part of the trust which was to exist during her lifetime. The Chase Manhattan Bank, N. A., the successor trustee, took no position on the merits of the construction sought. Special Term held that the "addendum” terminated on January 8, 1972. The Appellate Division affirmed. For the reasons which follow, we believe its order should be upheld.
We note first the need to search for the probable intention of the grantor, especially as evidenced by the instruments themselves, since, in construing an inter vivos trust, effect is to be given to that intention unless it is contrary to public policy or law (Matter of Nichol, 24 AD2d 191, 197 [Stevens, J.], mod 19 NY2d 207; Matter of Mathews, 280 App Div 23, affd 305 NY 605; Matter of Day, 10 AD2d 220, 223).
With that principle in mind, it is obvious that the two instruments in this case on their very face manifest an intention on the part of the grantor to gain for the property which he was thus conveying the advantages of what has come to be known as a "Clifford trust”, a name taken from the case of Helvering v Clifford (309 US 331). As a result of a series of litigations and Treasury Department regulations, such reversionary trusts came to be recognized, and are now commonly employed, as effective and lawful means by which trust income can be made taxable to other than a grantor, while enabling the latter to retain the management of the property and, on termination of the trust, have the principal revert to him.
For the trust to qualify for such tax treatment, however, save in circumstances not pertinent here, the reversionary *667 interest must be one which by its terms will not take effect either within 10 years from the date of the transfer to the trust or until the death of the income beneficiary. If a time period and a beneficiary’s life are combined as alternatives, as was done under the first instrument in the case before us, the time period must be of a "ten year nature” (Bogert, Trusts, § 268.10, p 257, citing Internal Rev Reg, 26 CFR 1.673 [a]-l [b]; Rev Rul 58-242, 1958-1 CB 251; see, also, Internal Revenue Code [1954] [US Code, tit 26, § 673]; see, generally, Bush, Short-Term Trusts: Advantages and Dangers, 24 NYU Inst on Fed Tax 317; Craven, Practical Uses and Problems of Short Term Trusts, 16 NYU Inst on Fed Tax 903; Yohlin, Saving Taxes by Short-Term Trusts, 5 Prac Law, No. 2, p 37).
The important role that tax consideration played in the settlor’s intentions is reaffirmed by the fact that the dates of the two instruments, each devising half of the total property involved under both, span an 11-day 1961-1962 year-end period, thus providing the additional tax advantage of giving each devise the benefit of the $3,000 annual Federal gift tax exclusion (Internal Revenue Code [1954], § 2503, subd [b]).
In this case, if each instrument were to be considered a separate trust, the result would be a termination date, for the first one, no sooner than December 28, 1971, which, including the date of execution and the date of termination, would be exactly the 10 years and one day after its execution required for qualification as a Clifford trust and, for the second one, also a period 10 years and one day, but terminating on January 8, 1972. Such an interpretation would afford the benefit of the intended tax planning to the property which each instrument separately described.
If, instead, the second instrument were regarded as merely amendatory of the first one to the extent of changing the termination date with regard to the additional conveyance of property, each portion of what would then be a single trust would be for the required minimum duration. But we cannot rewrite the language by which the addendum would have accomplished that amendment. No matter how it may otherwise be lacking in deft draftmanship, it is explicit and unambiguous in its provision for termination "not longer” than a period of 10 years, which would then become the end of the 10-year period for the single trust—January 8, 1972. Also unlike the first instrument, it does not allow for an alternative termination date measured by the lifetime of Elizabeth. *668 Thus, even if the second instrument had not created a trust which was separate and apart from the first one, but was construed to be but an amendment to it, at least so much of the trust as applied to the property transferred on January 8, 1962 would still have terminated on January 8, 1972 for all purposes, whether Elizabeth was then still alive or not.
In fact, the second instrument could not have served as an amendment, since our statutes require that there must be a properly executed written consent to an amendment of a trust by all persons beneficially interested in it. (Personal Property Law, § 23; Real Property Law, § 118, then in effect; re-enacted as EPTL 7-1.9; see Matter of Dodge, 25 NY2d 273.) Here that consent was not obtained, either as to the amendment of the date or any other provision of the first agreement.
True it is that the settlor on January 8, 1962 could have added the additional property to the trust created by the first instrument by delivering the property to the trustees without any additional writing at all. But he did not do so. If he had, that too would have frustrated his intent to have the additional property obtain the Clifford trust advantages. For, as to the property so delivered on January 8, 1962, the trust would have been subject to an alternative termination date of either December 28, 1971 or that of Elizabeth’s death, and, since the former date would control, the income would be taxable to the settlor. In contrast, his intent would be realized by construing the second instrument as a separate trust, to which Elizabeth’s consent was unnecessary. That construction, by upholding the instrument, accords with the principle that "where two different constructions are posssible, that is to be chosen which upholds and does not destroy the instrument” (Coyne v Weaver, 84 NY 386, 390).
Further, the termination of the second trust at the end of 10 years instead of at the end of Elizabeth’s life would not cause its corpus to vest in persons other than those who were both natural and clearly intended objects of his bounty. They are his children. He had designated them the contingent income beneficiaries under the first instrument. In both instruments, he had designated them as the contingent remaindermen to take instead of the settlor himself, if the latter was deceased at the time the trust terminated.
The incorporation by reference of provisions of the first instrument into the second does not alter their separate character. Such incorporations are ways used to abbreviate *669 legal documents or pleadings. Nor does the denomination of the second instrument as an "addendum” do so. It is the operative rather than the titular language of the second instrument that governs.
As Shakespeare put it, "that which we call a rose by any other name would smell as sweet”. In a legal framework, "rules of legal interpretation are rules of common-sense” (Hamilton, Alexander, The Federalist, Modern Library, 539 [emphasis in original]). And, in the narrower context of a trust instrument, the following language is as apt here as it was in the case for which it long ago was written: "Whatever trust they could create sprang into existence by the instrument which they executed * * * It was the complete creation of a trust if the Boggs will had never been mentioned in it, and the mere fact of the mention of that will, and the fact that the settlors have insisted in the instrument that they were going to do a thing which was improper, cannot invalidate that which they legally did. The recital of the instrument does not control. They recited that they were going to continue that trust, which was an impossibility. All that they did was to create another trust, affecting, it is true, a portion of the same property.” (Livingston v New York Life Ins. & Trust Co., 59 Hun 622, opn in 13 NYS 105, 108, on second app sub nom. McCurdy v New York Life Ins. & Trust Co., 83 Hun 612, affd 151 NY 667, on opn below on first app.)
The so-called "addendum” was, therefore, correctly construed as a separate instrument creating a separate trust terminating on January 8, 1972 as to additional property not part of the first instrument. Accordingly, the order appealed from should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the trust.