■ In the Matter of Eldon K. Andrews et al., Appellants-Respondents, v Trustco Bank, National Association, as Successor Trustee of the Trust made by Burton A. Andrews, Deceased, Respondent. Judith A. Andrews et al., Respondents-Appellants; Eliot Spitzer, as Attorney General, Respondent-Appellant. [735 NYS2d 640] —Rose, J. Cross appeals from an order of the Supreme Court (Ferradino, J.), entered December 13, 2000 in Albany County, which, *inter alia*, partially denied petitioners' application, in a proceeding pursuant to CPLR article 77, for an accounting and construction of a trust made by Burton A. Andrews.

This appeal requires construction of provisions of an inter vivos trust created by Burton A. Andrews (hereinafter the grantor) in 1982. The initial trustee was the Bank of New York, and the trust agreement provided that, during the grantor's lifetime, he was the sole beneficiary receiving all of the trust's net income and so much of the principal as the trustee deemed advisable for his "support, maintenance, welfare and comfort." If not revoked or altered by the grantor, the trust was to continue after his death with the trustee making annual distributions of the "net income as determined under the laws of the United States" to the grantor's surviving brothers, sisters, nieces and nephews. After the death of the last of those relatives, the trust was to continue as a perpetual charitable trust with the net income paid to named charitable beneficiaries. The trust agreement also provided that the trustee was permitted to settle its accounts by agreement with the then beneficiary or beneficiaries of the income, and that such agreement would bind all persons who were, or later became, entitled to a portion of the trust estate.

In October 1983, the grantor and the Bank of New York executed an amendment to the trust agreement appointing Schenectady Trust Company as substitute trustee. In that amendment, the grantor agreed to dispense with an accounting by the Bank of New York. Respondent, as successor to Schenectady Trust Company, has been administering the trust since then. The grantor died in 1992 without revoking or further amending the trust agreement and without requesting an accounting by respondent. In February 2000, petitioners, who are the current trust income beneficiaries, commenced this proceeding pursuant to CPLR article 77 and moved for partial summary judgment compelling respondent to render an accounting of the administration of the trust from the date of its formation to the present, declaring that capital gains are to be included in trust income distributions, and directing respondent to disclose certain documents. Respondent opposed these applications and cross-moved for a protective order. The Attorney General, on behalf of the charitable beneficiaries, joined in petitioners' request for a full accounting, but concurred in respondent's claim that the term "net income" does not include capital gains.

Supreme Court granted petitioners' request for an accounting, but limited its scope to the years following the grantor's death. Supreme Court also construed the phrase "net income as determined under the law of the United States" to exclude realized capital gains. In addition to denying petitioners' request for disclosure and granting respondent a protective order, Supreme Court deferred determination of the request made by Judith A. Andrews, an income beneficiary, for construction of another provision of the trust agreement.

Petitioners contend that the only reasonable construction of "net income as determined under the laws of the United States" is as income from any source, including capital gains in accordance with the definition of "gross income" provided by the Internal Revenue Code in 26 USC § 61. Respondent and the Attorney General counter that Supreme Court properly construed "net income" by reference to the pertinent Internal Revenue Service regulation (26 CFR 1.643 [a]-3 [a] [1]) and the statute which it interprets (26 USC § 643 [b]). In construing the trust agreement, Supreme Court was required to ascertain the intention of the grantor by looking first to the words used in the trust agreement and effectuating that intent as long as it is not contrary to public policy or established rules of law (*see, Matter of Gilbert*, 39 NY2d 663, 666; *Matter of McCabe*, 269 AD2d 727, 728). "Where language is unambiguous and

supports a reasonable meaning, it must be accepted as manifesting the grantor's intention; the court is bound and the canons of construction do not come into play" (*Matter of Gouraud*, 85 AD2d 342, 344, *affd* 59 NY2d 925 [citations omitted]).

In this case, the "net income" phrase used by the grantor is an unambiguous referral to Federal law and we agree that the applicable Federal provision is the regulation stating that capital gains "are ordinarily excluded from distributable net income, and are not ordinarily * * * required to be distributed to any beneficiary unless they are: * * * [a]llocated to income under the terms of the governing instrument or local law" (26 CFR 1.643 [a]-3 [a] [1]). Since the trust agreement here is silent on the issue and New York law allocates capital gains to principal (*see*, EPTL 11-2.1 [b] [2] [H]; [e] [7]), we find that Supreme Court's construction correctly discerned the grantor's intent. Supreme Court's construction is also consistent with the trust's overall plan of distribution since the grantor's apparent intent was to preserve the corpus of the trust in order to fulfill its dual purposes of benefitting family members during their lifetimes and establishing a perpetual stream of income for charitable giving. Attributing capital gains to principal increases the stream of income to both present and future beneficiaries, while distributing them as income could ultimately deplete the trust's ability to provide the stream of income contemplated by the grantor.

We turn next to petitioners' and the Attorney General's contention that Supreme Court should have directed respondent to account for the entire term of the trust, including those years when the grantor was alive and retained the power to revoke it. The grantor of such an inter vivos trust may provide that the trustee shall be excused from accounting to anyone but the grantor for acts of the trustee performed during his lifetime (*see, Matter of Central Hanover Bank & Trust Co.*, 176 Misc 183, 186, *affd* 263 App Div 801, *affd* 288 NY 608). Here, inasmuch as the grantor was also the sole beneficiary during his lifetime, the trust agreement made the trustee accountable only to the grantor until his death. Since this arrangement effectively excused the original and substitute trustees from accounting to anyone else during the grantor's lifetime, Supreme Court properly declined to retroactively make respondent accountable to others for that same time period (*see, Matter of Zilkha*, 174 AD2d 331, 334).

As to the disclosure sought by petitioners and denied by Supreme Court, we begin with the well-settled principle that

"[t]he [trial] court has broad discretion in supervising disclosure" and in granting protective orders limiting or denying discovery, especially where it would be "unduly burdensome" (*Torian v Lewis*, 90 AD2d 600, 601). Thus, this Court's review is limited to determining whether the trial court abused its discretion (*see, Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954; *Matter of Wible*, 284 AD2d 622, 624). Here, we find no abuse of discretion in Supreme Court's finding that "[t]he demands are either patently too broad, or irrelevant to the issues, or both." Petitioners' requests, for example, for "all promotional materials, advertising, brochures of the Trustco Trust Department since October 24, 1992" and "all memorandum, correspondence, and work papers related to the administration" of the trust plainly are overbroad, seek irrelevant information and impose an undue burden on respondent.

Finally, as to the request by Andrews for judicial construction of the phrase "survivors of my said nieces and nephews" used in the trust agreement, Supreme Court did not abuse its discretion by deferring judgment on this issue until an accounting is provided and the parties have an opportunity to address its findings (*see, Matter of Barenholtz*, 201 AD2d 305, 306). Regardless of when Supreme Court decides this issue, the canons of construction should lead to the same result and Andrews makes no showing of prejudice resulting from its deferral.

Crew III, J. P., Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.