■ In the Matter of the Estate of WALTER G. RICH, Deceased. KATHERINE M. RICH, Also Known as KARINE M. RICH, Appellant;

LESTER A. SITTLER, as Executor of WALTER G. RICH, Deceased, Respondent. (Proceeding No. 1.) (And Another Related Proceeding.) In the Matter of the WALTER G. RICH Revocable Living Trust under Agreement Dated 07/27/2007. LESTER A. SITTLER, as Trustee of the WALTER G. RICH Revocable Living Trust under Agreement Dated 07/27/2007, Respondent; KATHERINE M. RICH, Also Known as KARINE M. RICH, Appellant. (Proceeding No. 2.) (And Another Related Proceeding.) [985 NYS2d 297]—

McCarthy, J. Appeals (1) from an order of the Surrogate's Court of Delaware County (Becker, S.), entered January 27, 2012, which, in four proceedings pursuant to SCPA article 22, among other things, partially granted Lester A. Sittler's motion to, among other things, limit certain discovery demands made by Katherine M. Rich, (2) from an order of said court, entered February 19, 2013,[1] which, in three proceedings pursuant to SCPA article 22, among other things, denied Katherine M. Rich's motion for partial summary judgment sustaining certain of her objections to accountings of the estate of Walter G. Rich and a related trust, and (3) from an order of said court, entered June 13, 2013, which, in three proceedings pursuant to SCPA article 22, among other things, denied Katherine M. Rich's motion for partial summary judgment sustaining certain of her objections to accountings of the estate of Walter G. Rich and a related trust.

In 1990, Walter G. Rich (hereinafter decedent) and Katherine M. Rich (hereinafter Rich) entered into an antenuptial agreement that, among other things, provided her with certain benefits if decedent predeceased her. In July 2007, decedent executed a will leaving all of his property to a revocable living trust, the Walter G. Rich Revocable Living Trust (hereinafter the RLT). As relevant here, the RLT provided that, upon decedent's death, the trustee was required to make distributions to a separate trust, created by the RLT to benefit Rich and entitled, Trust for the Benefit of Katherine M. Rich (hereinafter TBR). Decedent died in August 2007.

---

**1.** Although the order is dated with the year 2012, it is clear from the papers relied upon that the order was entered in 2013.

Rich commenced the first of these proceedings seeking to compel an accounting of the estate. Lester A. Sittler, executor of decedent's estate and trustee of the RLT, petitioned for the judicial settlement of the accounts of the estate and the RLT. Rich made numerous objections to both accounts. The trustees of the TBR also filed a petition to settle the account for that trust.

In response to Rich's discovery demands related to these proceedings, Sittler moved to deny or limit various discovery demands and to quash or modify various subpoenas (*see* CPLR 2304, 3103). By order entered in January 2012, Surrogate's Court partially granted Sittler's motion, denying Rich certain document discovery and limiting subpoena questions as to certain witnesses to a time period starting with decedent's death. Rich appeals from that order.

Rich moved for partial summary judgment to sustain her objections to the accountings regarding her claim that she was entitled to separate benefits under the antenuptial agreement and under the RLT. Sittler cross-moved for summary judgment. By order entered in February 2013, Surrogate's Court denied the motion and cross motion. Rich appeals from that order.

Rich again moved for partial summary judgment, this time on her objections claiming that the amount to fund the TBR to be received from the RLT should not have included the amount of a separate nonprobate asset, a certain 401(k) savings plan that decedent designated, by beneficiary designation form, to be transferred directly to the TBR. Sittler cross-moved for, among other things, specific disclosure deadlines. By order entered in June 2013, Surrogate's Court denied Rich's motion and granted the cross motion. Rich appeals from that order as well. We now address all three appeals.

Surrogate's Court acted within its discretion in limiting disclosure. The court did not abuse its discretion in narrowing the time frame of relevant material to the period after decedent's death, considering the scope of these proceedings, which are limited to the accounting and administration of the estate and trust—and do not include decedent's pre-death estate planning (*see Matter of Cahn*, 161 AD2d 1065, 1066 [1990], *lv dismissed* 77 NY2d 939 [1991]; *Capitol Hill Twin Towers Corp. v Apcoa Div., ITT Consumer Servs. Corp.*, 45 AD2d 777, 777 [1974]; *see also* SCPA 2211; *Matter of 425 Park Ave. Co. v Finance Adm'r of City of N.Y.*, 69 NY2d 645, 648 [1986]). The court also did not err in denying access to the one challenged category of documents, based on Rich's failure to prove, in her motion submissions, the relevancy and materiality of the demanded documents. Thus, we affirm the January 2012 order.

In the February 2013 order, Surrogate's Court correctly denied Rich's motion for summary judgment on her objections regarding the antenuptial agreement. Rich failed to meet her prima facie burden of submitting proof of a legally operative agreement that was not fulfilled (compare Education Plus, Inc. v Glasser, 112 AD3d 1125, 1125-1126 [2013]). Rich submitted the antenuptial agreement, which provided, as relevant here: "Upon the death of [decedent], if [Rich] shall survive [decedent, Rich] shall receive and accept from [decedent] an amount equal to [33¹/₃%] of [decedent's] adjusted gross estate which shall be payable to a trust for [Rich's] benefit from which [Rich] shall be the sole income beneficiary for life. . . . It is the intention of the parties that the trust for [Rich's] benefit will qualify for the marital deduction for federal estate tax purposes." Rich also submitted the RLT, which contained the following provision: "If [Rich] survives [decedent], an amount equal to fifty percent (50%) of the residuary trust estate or [$6 million], whichever is greater, shall be held by Trustee, as a separate trust fund, to be known as the [TBR]." The RLT provided that the TBR would pay Rich certain amounts in regular installments "during her lifetime," in amounts greater than its income, and the TBR had no other beneficiary during her lifetime. Rich acknowledges that the TBR received $6 million, which was more than 50% of the residuary trust estate and also more than 33¹/₃% of decedent's gross adjusted estate.

To prevail, Rich had to show that the benefits provided to her under the RLT were a legal obligation separate and distinct from her rights under the antenuptial agreement. We agree with Rich that the antenuptial agreement is a valid contract, but we find that decedent complied with his obligation under that contract. The antenuptial agreement permits the parties to provide additional benefits to the other party through their respective estate planning. Decedent chose to provide Rich more through the RLT than he was required to under the antenuptial agreement, but Rich did not show that decedent intended to provide her benefits through the RLT that were entirely separate and additional to the benefits promised under the antenuptial agreement. In construing a trust agreement, courts are "required to ascertain the intention of the grantor by looking first to the words used in the trust agreement and effectuating that intent as long as it is not contrary to public policy or established rules of law" (Matter of Andrews v Trustco Bank, Natl. Assn., 289 AD2d 910, 911 [2001]; see Matter of Myers, 45 AD3d 955, 957 [2007]; Matter of Clark, 304 AD2d 1034, 1034 [2003]). Aside from some smaller specific bequests and trusts for Rich's children, decedent's dual major intent through the

RLT was to provide for Rich and to fund a charitable foundation. Rich asserts that she is entitled to one third of decedent's estate under the antenuptial agreement plus $6 million from the remaining two thirds of his estate. If we were to accept that assertion, the obligations to her, along with the specific bequests, would more than exhaust the adjusted gross estate, leaving no residuary estate to fund the charitable foundation.[2] This is inconsistent with the overall scheme of the RLT, which evinces an intent to fund the charitable foundation upon decedent's death (*see Matter of Andrews v Trustco Bank, Natl. Assn.*, 289 AD2d at 912).

Although the RLT makes no explicit mention of the antenuptial agreement, the RLT fulfilled decedent's obligation under that agreement by explicitly creating a trust to benefit Rich during her lifetime in an amount in excess of that required by the antenuptial agreement. Further, the RLT provides that the trust to benefit Rich be funded with assets that "qualify for the marital deduction," which is consistent with the intentions of the parties as explicitly set forth in the antenuptial agreement. The structure of the RLT creates an estate plan that is inconsistent with Rich's claim. The plain language provides for a trust to benefit Rich that meets the specific minimum requirements set out in the antenuptial agreement, and the RLT conforms to the parties' intentions regarding tax deductibility expressed in the agreement. Considering this evidence, Surrogate's Court properly determined that there is no issue of material fact on Rich's claim, because decedent intended to fulfill his obligation under the antenuptial agreement through the TBR created and funded by the RLT, and that trust was funded in an amount greater than required by the antenuptial agreement (*see Baldridge v State of New York*, 293 AD2d 941, 943-944 [2002], *lv denied* 98 NY2d 608 [2002]). Thus, the court correctly denied Rich's motion. Because this finding determines, as a matter of law, that Rich's related objections are meritless, we grant Sittler summary judgment dismissing such objections (*see* CPLR 3212 [b]; *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110 [1984]).

Surrogate's Court erred in its June 2013 order by denying Rich's motion regarding the 401(k) account. As to that issue, the question is whether the TBR should be funded with an amount that totals $6 million, including the amount from the

---

2. Although Rich disputes Sittler's figures in the accountings, it appears that—accepting Rich's arguments as to the amounts owed to her—no residuary estate would remain to fund the charitable foundation regardless of which parties' figures are used.

401(k), or whether the TBR should receive $6 million plus the amount of the 401(k). Decedent named the TBR as the designated beneficiary for the 401(k) at issue. The funds from that account therefore passed directly to the TBR; they did not get deposited in the RLT and thereafter pass through to the TBR. We must look to the language of the RLT, which also established the TBR, to determine the proper funding source for the $6 million. If the language is unambiguous, there is no need to consider any extrinsic evidence (see *Golden Gate Yacht Club v Société Nautique de Genève*, 12 NY3d 248, 255 [2009]; *Matter of Malone Family Trust [Murley—Cartwright]*, 79 AD3d 1214, 1215 [2010]).

The TBR was established under an article of the RLT entitled "Distribution of Trust Estate." After distributing portions of the trust estate to other individuals and separate trusts, the provision states: "All the rest of the trust estate . . . shall be disposed of as follows," then includes the language quoted above that provides the amount of $6 million for the TBR. Thus, the question comes down to what is considered part of the "trust estate."

An entire article of the RLT is entitled "Trust Estate." The first paragraph states: "All property subject to this instrument from time to time is referred to as the 'trust estate' and shall be held, administered, and distributed according to this instrument." The second paragraph states: "The trust estate consists of the property (plus the proceeds and undistributed income of the property) that is listed in Schedule A and that is hereafter transferred to the trust by the Grantor or Grantor's will, as insurance proceeds or pension benefits, or from any other person or source. The Grantor's property, listed in Schedule A or subsequently added to the trust estate, is the separate estate of Grantor."

Pursuant to the broad language of the first paragraph, any property that ever ends up in the RLT, the TBR or the other trusts created under the RLT would all be considered part of the trust estate. Pursuant to the second paragraph of that article, to constitute part of the trust estate of the RLT, property must be "transferred to the trust."[3] As the 401(k) was not "transferred to" the RLT, it is not part of the trust estate under the second paragraph. To the extent that these paragraphs contain "contradictory language, specific provisions control over general provisions" (*Green Harbour Homeowners' Assn., Inc. v G.H. Dev. & Constr., Inc.*, 14 AD3d 963, 965 [2005]; *accord Herr*

---

**3.** The "trust" referred to must be the RLT, because the document does not create the TBR or other trusts until several articles later.

*v Herr*, 97 AD3d 961, 963 [2012], *lv dismissed* 20 NY3d 904 [2012]). Additionally, the provision establishing the TBR requires the trustee of the RLT to hold $6 million in what will become a separate trust, the TBR. The trustee of the RLT could only hold funds that were in the possession of the RLT. Thus, property that was distributed directly to the TBR and passed outside the RLT could not be counted as part of the $6 million that would originally fund the TBR. Surrogate's Court erred in denying Rich's motion for summary judgment on her objections to Sittler's accounting to the extent that it included the value of the 401(k) as part of the $6 million. The TBR should have been funded with $6 million from the RLT and received the value of the 401(k) in addition to that amount.

The parties' remaining contentions have been reviewed and are either without merit or need not be addressed in light of this decision.

Lahtinen, J.P., Garry and Egan Jr., JJ., concur. Ordered that the order entered January 27, 2012 is affirmed, without costs. Ordered that the order entered February 19, 2013 is modified, on the law, without costs, by granting summary judgment to Lester A. Sittler dismissing Katherine M. Rich's objections based on the antenuptial agreement, and, as so modified, affirmed. Ordered that the order entered June 13, 2013 is modified, on the law, without costs, by reversing so much thereof as denied Katherine M. Rich's motion for partial summary judgment on her objections regarding the 401(k) account; motion granted; and, as so modified, affirmed.