# Third District Court of Appeal

## State of Florida

Opinion filed November 30, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D14-1819 & 3D14-38
Lower Tribunal Nos. 11-1314 & 11-3437

_____

**Arthur S. Turkish and Shari Turkish, individually and as Trustees of the Ada Turkish Trask 2005 Trust Number One and Ada Turkish Trask 2005 Trust Number Two,**
Appellants/Cross-Appellees,

vs.

**Carole Brody,**
Appellee/Cross-Appellant.

Appeals from the Circuit Court for Miami-Dade County, Maria M. Korvick, Judge.

Ross & Girten, and Lauri Waldman Ross and Theresa L. Girten, for appellants/cross-appellees.

Samson Appellate Law, and Daniel M. Samson; Kluger, Kaplan, Silverman, Katzen & Levine, P.L., and Bruce A. Katzen and Josh M. Rubens, for appellee/cross-appellant.

Before SHEPHERD, ROTHENBERG, and SCALES, JJ.

ROTHENBERG, J.

Arthur S. Turkish ("Arthur") and Shari Turkish ("Shari") (collectively, "Co-Trustees") appeal, and Carole Brody ("Carole") cross-appeals, from orders entered by the trial court relating to the following two adversary proceedings filed by the parties after Ada Turkish Trask's ("Mrs. Trask") estate ("the Estate") was opened: (1) an action filed by Carole against the Co-Trustees, individually and as trustees, alleging breach of fiduciary duty and unjust enrichment ("Trust Litigation"), and (2) an action filed by Arthur, as the personal representative of Mrs. Trask's estate, seeking to enforce three demand promissory notes executed by Carole and her late husband ("Promissory Notes Litigation").  We affirm in part and reverse in part.

## I.  FACTS AND PROCEDURAL HISTORY

Mrs. Trask died on June 2, 2010.  Later that month, the Estate was opened, and Arthur was named as the Estate's personal representative.  Mrs. Trask's last will and testament named two of her adult children, Arthur and Carole, as equal beneficiaries and disinherited a third adult child.

### A.  Trust Number One and Trust Number Two

Prior to her death, Mrs. Trask created the Ada Turkish Trask 2005 Trust Number One ("Trust Number One") and the Ada Turkish Trask 2005 Trust Number Two ("Trust Number Two") on January 27, 2005, naming Arthur and his daughter, Shari, as co-trustees.

#### 1.  Trust Number One

2

Carole and Arthur were the beneficiaries of Trust Number One during Mrs. Trask's lifetime, and upon Mrs. Trask's death, the remaining principal was to be divided equally between Carole and Arthur. Trust Number One vests the Co-Trustees with "absolute discretion" during Mrs. Trask's lifetime to make distributions from the trust's principal to Arthur and/or Carole "in equal or unequal amounts and to either one of them to the exclusion of the other." Trust Number One also permits Arthur, as trustee, to make distributions to himself for his "support, health, education and/or maintenance without the consent of any other Trustee then serving." The primary asset transferred into Trust Number One was a 99% interest in the Ada Turkish Trask Family Limited Partnership ("FLP"), which was valued at $2,299,700 when transferred.

### 2. Trust Number Two

Mrs. Trask was the sole beneficiary during her lifetime of Trust Number Two. Upon Mrs. Trask's death, the remaining principal was to be divided equally between Arthur and Carole.

**B. The Settlement of Mrs. Trask's Gift Tax Liability**

The year after Trust Number One and Trust Number Two were created, Mrs. Trask, through counsel, voluntarily disclosed to the Internal Revenue Service ("IRS") that she owed over $3 million in outstanding gift taxes for the years 1991 through 2004. In June 2008, Mrs. Trask and the IRS settled for $1,022,500.[1] Mrs.

3

Trask requested that Arthur obtain the money to pay the IRS settlement from Trust Number One, and thereafter, to loan her the money. Without obtaining prior approval from Carole, the Co-Trustees approved the distribution to Arthur; Mrs. Trask executed an unsecured promissory note evidencing the $1,022,500 indebtedness to Arthur, individually; and Mrs. Trask paid the IRS the following day ("IRS transaction").

**C. Carole's Objection to the IRS Transaction**

In late July 2008, Carole's counsel objected to the IRS transaction, asserting that the transaction was a breach of the Co-Trustees' "responsibility" because the effect was to give over $1 million to Arthur from Trust Number One, which was intended to benefit both Arthur and Carole.

**D. Accountings for 2005 through 2007 for Trust Number One and Trust Number Two and the Resolution of Carole's Objections to the IRS Transaction**

On August 19, 2009, Carole received revised accountings for the time period covering January 27, 2005 through December 31, 2007, for Trust Number One and Trust Number Two ("2005 to 2007 accountings"), along with a Receipt and Release Agreement ("RRA"). These accountings included a statute of limitations notice consistent with section 736.1008(4), Florida Statutes (2009), which notified

---

[1] It is undisputed that Mrs. Trask made numerous and substantial gifts to Arthur, and therefore, the IRS settlement directly benefitted Arthur because Arthur would have been responsible for a large portion of any gift tax liability as he was the one who received a large portion of the gifts.

Carole that there is a six-month statute of limitations for any claim for breach of trust based on matters adequately disclosed in the accountings or any other written report of the trustees.

In September 2009, in response to Carole's objections to the IRS transaction, the Co-Trustees and Carole executed a Supplemental Release Agreement ("SRA"), which provides that the **SRA was supplementing the RRA for the 2005-2007 accountings**. The SRA provides that the parties were settling all claims arising out of the IRS transaction. The SRA accurately reflects the IRS transaction and Carole's objections to the IRS transaction. Specifically, the SRA provides that Arthur, individually, was willing to "assign the Note to Trust Number One in satisfaction of any and all claims against him by all beneficiaries of Trust Number One" arising out of the IRS transaction, and that "each interested party . . . waives any right he or she has, might have or has had to object to any action or omission of Arthur Turkish and/or Shari Turkish, individually, or of Arthur Turkish and/or Shari Turkish, as Trustees of Trust Number One." The SRA also provides that "the Trustees, Arthur Turkish and Shari Turkish, have described and provided the value (if known) of the assets of Trust Number One and Trust Number Two as of December 2007 in a Summary of Assets being attached to this Supplemental Release Agreement . . . ." The attached Summary of Assets provides that as of December 31, 2007, Trust Number One held, in part, a 99% interest in

the FLP, and sets forth the value of the FLP. The Summary of Assets also reflects the value of Trust Number Two.[2] Carole executed both the RRA and the SRA.

**E. Accountings for 2008, 2009, and 2010**

1. 2008 Accountings

On July 7, 2010, Carole received the accountings for Trust Number One and Trust Number Two for the time period stemming from January 1, 2008 to December 31, 2008 ("2008 accountings"), along with the RRA for those accountings. Along with the 2008 accountings and the RRA, the Co-Trustees submitted a Summary of Assets, which adequately disclosed the value of the assets in Trust Number One and Trust Number Two. The 2008 accountings contained the statute of limitations notice, notifying Carole of the applicable six-month statute of limitations for a breach of trust action based on matters disclosed in a trust accounting or other written report of the trustees.

2. 2009 to 2010 Accountings

On October 11, 2011, Carole received the accounting for Trust Number One and Trust Number Two for the period stemming from January 1, 2009 to June 30, 2010 ("2009 to 2010 accountings").

**F. The Adversary Proceedings**

---

[2] There is no indication in the record that the Summary of Assets attached to the SRA incorrectly valued the assets in either Trust Number One or Trust Number Two.

6

### 1. The Trust Litigation Filed by Carole

On April 6, 2011, Carole sued Arthur and Shari individually and as trustees. The operative complaint asserts, in part, claims for breach of fiduciary duty and unjust enrichment based on their actions as co-trustees of Trust Number One during three separate time periods—January 27, 2005 through December 31, 2007; January 1, 2008 through December 31, 2008; and January 1, 2009 through June 30, 2010—contesting the numerous distributions to Arthur from Trust Number One, including the distribution to Arthur in the amount of $1,022,500 for the IRS transaction in 2008.

The Co-Trustees answered the operative complaint, asserting several affirmative defenses, including that Carole's claims are barred by the RRA and SRA. Both the Co-Trustees and Carole moved for summary judgment. In moving for summary judgment, the Co-Trustees argued that: (1) the distributions, including the distribution for the IRS transaction, were disclosed in the accountings, and therefore, Carole's claims are barred by the applicable six-month statute of limitations for claims brought by a beneficiary against a trustee for breach of trust; (2) the distributions made to Arthur were permitted under the broad terms of Trust Number One; and (3) Carole's claim as to the IRS transaction is barred by the SRA, which supplemented the RRA for the 2005 to 2007 accountings. The trial court denied the motions.

2. The Promissory Notes Litigation filed by Arthur, as Personal Representative of the Estate

In October 1991, Carole and her late husband, Jeffrey Brody, executed two demand promissory notes ($20,000 and $45,000) in favor of Arthur, individually, and in March 1997, they executed a third demand promissory note ($45,000) in favor of Arthur, individually. Following Mrs. Trask's death, Carole learned that each time she asked Arthur to loan her money, Arthur obtained the funds from Mrs. Trask.

In October 1991, Mrs. Trask handwrote the following letter:

October 8th, 1991

To Whom it may Concern:

My son, Arthur Turkish, informed me that my daughter Carole and her husband Jeffrey Brody, were in need of $65,000. As I understand, Arthur tried to get a loan from the banks, but that would have taken too long, as they need the money before the end of October 1991, therefore Arthur had no alternative but to ask me for the money (Carole told Arthur not to mention this to Mother (meaning me)[.]

Accordingly, I am giving Arthur a check today in the amount of $20,000.00 and when the funds are available to me, I will give Arthur the balance of the $65,000.00.

Please be advised, that I will not demand or expect repayment of these monies that I have given and will give to Arthur, who in turn, will give to Carole and Jeffrey Brody, until such monies are repaid in full by Carole and Jeffrey Brody. /s/ Ada Turkish Trask

Further, in March 1997, Mrs. Trask penned the following letter:

8

March 24th, 1997

Dear Arthur,

I am going to give you $30,000 this week so you can give it to Carole and her husband, Jeffrey Brody for his business. I do not want you to tell them that I am giving them this money or that you told me about it. . . .

. . . .

I will not demand or expect repayment of this money that I have given you until such money is repaid in full by Carole and Jeffrey.

I love you,

/s/ Mother<br>(Ada Turkish Trask)

In July 2011, Arthur assigned the three promissory notes to himself as the personal representative of the Estate based on the theory that the money was never owed to Arthur, but to Mrs. Trask's Estate. Thereafter, Arthur, as personal representative of the Estate, demanded payment of the three promissory notes plus accrued interest. After Carole failed to pay the amount demanded, Arthur, as personal representative of the Estate, filed suit against Carole to enforce the demand promissory notes. In response, Carole raised several affirmative defenses, including waiver by both Arthur and Mrs. Trask. The Estate moved for summary judgment, which Carole opposed.

## G. Trial Court's Orders

9

1. The December 6, 2013 Order

The trial court conducted an evidentiary hearing on the issues pertaining to the 2005 to 2007 accountings, the RRA for those accountings, and the SRA pertaining to the IRS transaction. The trial court found that prior to Carole's execution of the SRA, Arthur failed to disclose to Carole that Mrs. Trask had very little money of her own and that the $1,000,000 condominium Mrs. Trask lived in was owned by a trust Mrs. Trask created in 1980 ("1980 Trust"), not by Mrs. Trask. The trial court ruled that Arthur's failure to disclose this information "was a conflict of interest because Arthur Turkish was a Co-Trustee of Trust [Number] One," and therefore, "the SRA is not valid to bar Carole Brody's claims with respect to the [IRS] transaction covered in the SRA." Based on these findings, the trial court ordered Arthur to repay $511,250 (one-half of the promissory note executed by Mrs. Trask for the funds loaned to her to satisfy her IRS debt) plus interest to Trust Number One.

At that same hearing, the trial court addressed the Estate's motion for summary judgment filed in the Promissory Notes Litigation. Carole's counsel argued that the Estate's motion for summary judgment should be denied because genuine issues of material fact exist as to Carole's defenses, including waiver. The trial court rejected this argument and granted summary judgment in favor of the Estate, finding that Carole owes the Estate $304,525.90[3] for the three demand

10

promissory notes, which includes interest, attorney's fees, and costs. The trial court further ruled that the amount Carole owes to the Estate shall be set-off by any amount Carole may ultimately receive from the Estate, Trust Number One, or Trust Number Two.

### 2. Trial Court's Final Order

The trial court addressed the remaining issues during several days of trial. The trial court entered a final order finding that Arthur, as trustee, owed Carole a fiduciary duty when making distributions to himself from Trust Number One for his health, maintenance, and support. The trial court noted that Arthur had been "historically" receiving $114,000 per year, and that as the funds in Trust Number One were being depleted, he should have reduced the historical distributions by half—from $114,000 to $57,000 annually. Thus, the trial court ruled that Arthur breached his fiduciary duty to Carole because, rather than decreasing the "historical" distributions by half, he began to increase the distributions. The trial court, therefore, ordered Arthur to return $253,000 to Trust Number One, which represents annual distributions over $57,000 for the time period from January 1, 2008 to June 2, 2010.[4]

---

[3] This amount was later increased as a result of additional accrued interest.

[4] For example, during 2009, Arthur received $181,500 in distributions for his health, maintenance, and support. Therefore, for 2009, the trial court ordered Arthur to return $124,500 to Trust Number One. Although Arthur's distributions to himself may seem excessive, the record supports these distributions.

11

Following the entry of the trial court's final order, the trial court denied rehearing. These appeals and cross-appeal followed.

## II. ISSUES

The parties have raised numerous issues in these appeals. As to the Trust Litigation, the Co-Trustees appeal: (1) the portion of the trial court's final order determining that Arthur breached his fiduciary duty to Carole by making certain distributions to himself for his health, maintenance, and support from Trust Number One from January 2008 to the date of Mrs. Trask's death on June 2, 2010, and ordering Arthur to return a portion of the distributions to Trust Number One; and (2) the portion of the December 6, 2013 order finding that the SRA executed by the parties is invalid and unenforceable because Arthur, as trustee of Trust Number One, breached his fiduciary duty to Carole, and therefore, ordering Arthur to return $511,250 to Trust Number One. Carole appeals from the portion of the trial court's December 6, 2013 order granting summary judgment and subsequent final judgment in favor of the Estate in the Promissory Notes Litigation, thereby enforcing the three demand promissory notes. For the reasons that follow, we reverse the trial court's determination that Arthur breached his fiduciary duty relating to the distributions he made to himself from Trust Number One for his health, maintenance, and support; affirm the trial court's order finding that the

12

SRA is invalid and unenforceable; and reverse the trial court's granting of summary judgment in favor of the Estate in the Promissory Notes Litigation and remand for further proceedings.[5]

## III. ANALYSIS

### A. Distributions to Arthur from Trust Number One from January 2008 through June 2, 2010

Arthur contends that the trial court erred by finding that he breached his fiduciary duty to Carole by making certain distributions to himself from Trust Number One and ordering Arthur to return $253,000 to Trust Number One. Because the distributions Arthur made to himself from January 2008 through June 2010 were authorized by the express terms of Trust Number One, we agree.[6]

The trial court's ruling ignores that Trust Number One gave Arthur and Shari, as trustees, "**absolute discretion**" to make distributions from the principal, "even to the extent of the whole thereof," to either Carole or Arthur "**in equal or**

---

[5] The parties have raised other issues in these appeals. We find that issues not addressed in this opinion are without merit and do not warrant discussion.

[6] Carole also appealed the trial court's ruling that Carole's claim relating to the distributions made to Arthur from Trust Number One from January 27, 2005 through December 31, 2007 was barred because these distributions were disclosed in the 2005 to 2007 accountings, and thereafter, Carole executed the RRA in September 2009, approving these trust accountings and releasing the Co-Trustees of any liability in connection with the matters disclosed in these accountings. We conclude that Carole's argument as to this ruling lacks merit and does not warrant discussion.

13

**unequal amounts and to either one of them to the exclusion of the other**."
(emphasis added). Further, Trust Number One also permitted Arthur, as trustee, to make distributions to himself for his "support, health, education and/or maintenance without the consent of any other Trustee then serving."[7] Trust Number One did not limit the amount of the distributions.

The record before this Court reflects that, despite Arthur's lack of significant outside employment for decades, he nonetheless maintained an extravagant lifestyle. His mother, Mrs. Trask, was aware of, participated in, and enjoyed Arthur's lifestyle, and opted to finance his lifestyle through distributions from Trust Number One[8] and other substantial gifts. Therefore, based on the broad

---

[7] The relevant provision provides:

> 1. During the Settlor's lifetime, the Trustees shall invest and reinvest the principal of the trust and shall pay so much of the income therefrom and such sums out of the principal thereof (even to the extent of the whole thereof) to the Settlor's son, ARTHUR TURKISH, and/or the Settlor's daughter[,] CAROLE BRODY, in equal or unequal amounts and to either one of them to the exclusion of the other, as the Trustees, in their absolute discretion, shall determine, accumulating any balance of the income at least annually and adding the same to principal . . . .
>
> In accordance with section 10-10.1 of the New York Estates Powers and Trust Law, and notwithstanding anything to the contrary herein, any Trustee who is a permissible beneficiary under this Article shall be entitled to make distributions to himself or herself for his or her support, health, education and/or maintenance without the consent of any other Trustee then serving.

[8] Prior to the creation of Trust Number One, Mrs. Trask chose to finance Arthur's lifestyle through distributions from other trusts. Mrs. Trask also made substantial and numerous monetary gifts to Arthur, which resulted in the gift tax liability to

language reflected in Trust Number One, including the "absolute discretion" given to the trustees by Mrs. Trask, and because we cannot circumvent Mrs. Trask's clear intent, we conclude that Arthur did not breach his fiduciary duty to Carole relating to any distributions he made to himself between 2008 and the time of Mrs. Trask's death on June 2, 2010. See Matter of Gilbert, 350 N.E. 2d 609, 610-611 (N.Y. 1976) ("[I]n construing an [i]nter vivos trust, effect is to be given to [the probable intention of the grantor] unless it is contrary to public policy or law."); Oakes v. Muka, 818 N.Y.S. 2d 647, 648 (N.Y. App. Div. 2006) (recognizing that "courts will, in construing a living trust, seek to honor the settlor's intent unless, among other things, it is contrary to public policy").[9]  Accordingly, we reverse the portion of the order under review requiring Arthur to return $253,000 to Trust Number One.

**B.  Trial Court's Ruling as to the IRS Transaction**

1.  The Validity of the SRA

Carole contends, and the trial court found, that the SRA, which is a supplement to the 2005 to 2007 RRA, is invalid because Arthur, as a co-trustee, failed to disclose to Carole, a beneficiary, material facts pertaining to the matter

---

the IRS, which was settled in 2008.

[9] The parties do not dispute that based on the language in Trust Number One and Trust Number Two, New York law governs all issues relating to the Trust Litigation, except for the statute of limitations defenses raised by the Co-Trustees, which is governed by Florida law.

being settled in the SRA. Specifically, Arthur failed to disclose to Carole that she was agreeing to settle all claims against Arthur and Shari, individually and as co-trustees, relating to the IRS transaction based upon Arthur's agreement to "contribute" the promissory note executed by Mrs. Trask, which was virtually a worthless piece of paper, to Trust Number One. Prior to Carole's execution of the SRA, not only did Arthur know that Mrs. Trask had very few personal assets, he also knew, but failed to disclose, that the Bal Harbour condominium Mrs. Trask lived in was owned by the 1980 Trust, not Mrs. Trask; Arthur was the sole beneficiary of the 1980 Trust upon Mrs. Trask's death; and the Bal Harbour condominium would not become an Estate asset upon Mrs. Trask's death, but instead would pass directly to Arthur.

We acknowledge that generally a release between adversaries constitutes a complete bar to an action which is the subject of the release. See, e.g., Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V., 952 N.E. 2d 995, 1000 (N.Y. 2011) ("Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release.") (internal citation and quotation marks omitted). However, the SRA was not merely a settlement between adversaries, but rather a supplement to the RRA entered into between the Co-Trustees and Carole, a beneficiary. Thus, under New York law, which the parties agree controls as to the SRA, Shari and Arthur, as co-trustees, owed a duty

16

to fully disclose all pertinent facts to Carole, a beneficiary, even though the Co-Trustees and Carole were adversaries at that point.

Under New York law, the SRA, as a supplement to the RRA, is binding only if the Co-Trustees made a "full disclosure."

> An agreement to discharge the fiduciary and settle an account will be binding provided (1) all interested parties who would be necessary parties in a judicial proceeding settling the account sign the agreement; (2) the fiduciary has made full disclosure . . . in an account circulated to all signatories to the agreement; and (3) all signatories to the agreement are competent adults. **Failure to make full disclosure will nullify the release**.

In re LeoGrande, 821 N.Y.S. 2d 862, 867 (N.Y. Surr. 2006) (internal citations and quotation marks omitted; emphasis added); see also Matter of Birnbaum, 117 A.D. 2d 409, 416 (N.Y. App. Div. 1986) (noting that a "Release and Discharge" obtained by fiduciary from a beneficiary is "voidable" by the beneficiary "if the fiduciary fails to disclose material facts which he knew or should have known, if he used the influence of his position to induce the consent or if the transaction was not in all respects fair and reasonable").

In the instant case, although the facts recited in the SRA were accurate, the Co-Trustees failed to make a "full disclosure" to Carole, a beneficiary—that the promissory note Arthur agreed to "contribute" to Trust Number One in exchange for Carole's release was virtually worthless because Mrs. Trask did not have the ability to repay the promissory note during her lifetime and there would be

17

insufficient estate assets to pay the promissory note upon her death because the Bal Harbour condominium was not owned by Mrs. Trask. Therefore, we affirm the trial court's ruling that the SRA is invalid due to Arthur's failure to disclose material facts.

## 2. Adequacy of the Trust Disclosure Documents

The Co-Trustees argue that even if the SRA was voidable based on Arthur's failure to disclose material facts to Carole before she signed the SRA, Carole's claims for breach of trust relating to the IRS transaction are barred by Florida's six-month statute of limitations because the 2008 trust disclosure documents, including the 2008 accountings, adequately disclosed the IRS transaction. We disagree.

Section 736.1008(2) of the Florida Statutes provides:

> Unless sooner barred by adjudication, consent, or limitations, a beneficiary is barred from bringing an action against a trustee for breach of trust **with respect to a matter that was adequately disclosed in a trust disclosure document** unless a proceeding to assert the claim is commenced within 6 months after receipt from the trustee of the trust disclosure document or a limitation notice that applies to that disclosure document, whichever is received later.

(emphasis added). Section 736.1008(4)(a), which addresses when "a matter" is adequately disclosed, provides as follows: "A trust disclosure document adequately discloses a matter if the document provides sufficient information so that a beneficiary knows of a claim or reasonably should have inquired into the

18

existence of a claim with respect to that matter."

In the instant case, Carole's claims against the Co-Trustees for breach of fiduciary duty was not based solely on the IRS transaction itself, but also on Arthur's agreement to resolve Carole's objections to the IRS transaction by "contributing" the promissory note executed by Mrs. Trask to Trust Number One without disclosing that he knew that the promissory note was virtually worthless. Therefore, we must determine whether the 2008 trust accountings provided Carole with sufficient information such that she should have known of her claim or reasonably inquired into her claim.

The 2008 accounting for Trust Number One disclosed that Arthur received a $1,022,500 distribution on October 24, 2008, and that disclosure references Note 5 of the appendix attached to the 2008 accounting. Note 5 provides:

> This amount was loaned by Arthur Turkish to Ada Turkish Trask to enable Ada Turkish Trask to settle a Federal tax assessment. Ada Turkish Trask gave a promissory note evidencing this indebtedness to Arthur Turkish in the amount of $1,022,500 plus annual interest at the rate of 3.45%. Arthur Turkish contributed the promissory note to this Trust on October 9, 2009 pursuant to an agreement by and among all of the qualified beneficiaries of this Trust.

Therefore, the 2008 accounting for Trust Number One discloses the IRS transaction itself, and that Arthur "contributed" the promissory note to Trust Number One as part of an agreement among the beneficiaries. The 2008 accounting, however, fails to disclose that the promissory note that Arthur

19

contributed to Trust Number One was basically worthless due to Mrs. Trask's lack of personal funds and due to the fact that the Bal Harbour condominium Mrs. Trask lived in would never be part of the Estate because the condominium was owned by the 1980 Trust, not Mrs. Trask. Further, the 2008 accounting for Trust Number One did not provide Carole with sufficient information that reasonably should have led her to inquire into her claim against the Co-Trustees. Therefore, the six-month statute of limitations set forth in section 736.1008(2) is not applicable because the matter was not "adequately disclosed in a trust disclosure document." As such, Carole's claims for breach of fiduciary duty against Arthur and Shari were not time barred.

### C. Trial Court's Ruling as to the Promissory Notes Litigation

Carole contends that the trial court erred by granting summary judgment in favor of the Estate in the Promissory Notes Litigation because genuine issues of material fact exist as to her affirmative defense of waiver. We agree.[10]

"Summary judgment is proper if there is no genuine issue of material fact if the moving party is entitled to a judgment as a matter of law. Thus, our standard of review is de novo." Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) (citation omitted).

We have reviewed the letters written by Mrs. Trask in 1991 and 1997. The

---

[10] Carole asserted other affirmative defenses. Carole's arguments as to the remaining affirmative defenses lack merit and do not warrant discussion.

gist of those letters is that if Carole does not repay Arthur, Arthur does not have to repay his mother, Mrs. Trask. Therefore, as the three promissory notes have now been assigned to the Estate, which is not at issue in this appeal, it appears that repayment of those notes may have been waived because Arthur can no longer seek repayment from Carole, and Mrs. Trask specifically provided in her written "letters" that she (and thus now her Estate) would not seek repayment of the notes unless they were paid in full (to Arthur). Thus, there exists material issues in dispute as to whether Arthur waived his right to seek repayment of the notes by assigning them to the Estate, and whether the Estate may seek repayment of the notes where Mrs. Trask's intent not to do so has been clearly stated and memorialized. Accordingly, we reverse the trial court's ruling as to the promissory notes, and on remand, the trial court is to fully address this issue.[11]

## IV. CONCLUSION

Based on the above analysis, we reverse the portion of the order under review requiring Arthur to return $253,000 to Trust Number One; affirm the portion of the order finding that Arthur breached his fiduciary duty to Carole; and reverse the portion of the order enforcing the three demand promissory notes and remand for further proceedings to fully address Carole's affirmative defense of

---

[11] Based on our reversal of the entry of final summary judgment as to the Promissory Notes Litigation, we reverse the portions of the order awarding fees and costs to the Estate and requiring a setoff.

waiver.  All remaining issues raised by the parties are affirmed.

Affirmed in part; reversed in part and remanded for further proceedings.

SCALES, J., concurs.

SHEPHERD, J., concurring in part and dissenting in part.

I concur in Parts III. A and III. C of the majority opinion. I respectfully dissent from Part III. B, which affirms that portion of the trial court's order requiring Arthur to return $511,250 (one-half of the promissory note executed by Mrs. Trask for funds loaned to her by Arthur to satisfy her IRS debt). As is well summarized in Parts I. C and I. D of the Facts and Procedural History of this case, Carole objected to the IRS settlement transaction from July 2008 until the time the SRA was executed by the Co-Trustees and Carole in September 2009. As counsel for Arthur accurately sets forth in the Initial Brief, by this time:

> The relationship between the parties was "no longer one of unquestioning trust." They were **adversaries**, negotiating a settlement at arms length under threat of litigation. Carole chose to execute the SRA, which included a broad general release. Centro Empresarial Cempresa, S.A., 17 N.Y. 3d at 275, 278. Arthur assigned the promissory note to Trust One in satisfaction of "any and all claims against him…arising out of the facts recited," while Carol "waive[d] any right… she has, **might have** or has had" to object to "**any action or omission**" of Arthur and Shari, individually or as trustees. (S.R. 363). Carole further remised, released and discharged Arthur and Shari, both individually and as trustees "from any and all claims, demands or liabilities whatsoever which the beneficiaries have, or might have by reason of their "acts and omissions… individually, or as Trustees of Trust One." (S.R.363-64).

This is precisely the type of broad release which barred Carole's claims regarding the IRS transaction. See Morefun, 588 Fed. Appx. at 55: Bellefonte Re Insurance Company, 757 F.2d at 526-27; Centro Empresarial Cempresa, S.A., 17 N.Y. 3d at 377-78; Long v. O'Neill, 2015 WL 869317 at 2-3.

Here, the probate court found the SRA was "not valid" because Arthur was a fiduciary and did not disclose to Carole that "Ada had very little money of her own" (with which to repay her promissory note), and that Ada's condominium was held by a different trust. (R.4307). Assuming that **all** of the court's factual findings are correct, its legal conclusion was erroneous. As a matter of law, the SRA **was still** valid, binding and enforceable.

For this reason **alone**, the orders requiring Arthur to repay Trust One half of $1,022,500 plus interest (reflecting the IRS transaction) should be reversed.

I agree with this reasoning and would therefore completely reverse the judgment entered below.