Matter of Johnson (2018 NY Slip Op 08220)





Matter of Johnson


2018 NY Slip Op 08220


Decided on November 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 29, 2018

525671

[*1]In the Matter of the Estate of JUNE R. JOHNSON, Deceased. TRUSTCO BANK, as Trustee of the Trust of JUNE R. JOHNSON, Deceased, Respondent; SARATOGA COUNTY ANIMAL SHELTER, Appellant.

Calendar Date: October 19, 2018

Before: Lynch, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


Steven Dorsey, County Attorney, Ballston Spa (Hugh G. Burke of counsel), for appellant.
McNamee Lochner, PC, Albany (Richard D. Cirincione of counsel), for respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from that part of an order of the Surrogate's Court of Schenectady County (Versaci, S.), entered September 7, 2017, which partially granted petitioner's motion for summary judgment and partially denied respondent's motion for summary judgment dismissing the petition.
The background of this matter is more fully discussed in this Court's decision in a related appeal (Matter of Johnson, ___ AD3d ___ [decided herewith]). On July 29, 2003, June R. Johnson (hereinafter decedent) executed a revocable trust agreement and a will directing that at her death all assets of her estate be transferred to petitioner as trustee under the trust agreement. Decedent was the sole beneficiary of the trust during her lifetime and, upon her death, the trust provided for distribution of the entire remainder of the trust to five charitable beneficiaries, including respondent, which is entitled to a one-eighth share of the trust remainder. Decedent died on November 1, 2007 and, pursuant to her will, petitioner was appointed as executor of decedent's estate on July 28, 2008.
On May 30, 2014, petitioner filed a petition seeking judicial settlement of its account as trustee pursuant to the July 2003 trust agreement for the period commencing on October 9, 1987. Petitioner did not submit proof of a prior trust agreement or otherwise explain why it submitted an account covering a period that commenced years prior to both execution of the 2003 trust agreement and decedent's death. The account showed that on November 30, 2013, the trust held assets, consisting entirely of cash equivalents, of $156,588.83, anticipated receiving an additional $117,380.227 as a final distribution from the estate and had unpaid administrative expenses of $13,784.57. Respondent objected, asserting, among other things, that the accounting did not [*2]provide an initial value at inception on July 29, 2003, that commissions taken by the trustee were not properly documented and calculated, that several claimed expenses were improper and that the delay in closing the trust required disallowance of trustee's commissions.
Petitioner subsequently moved for summary judgment seeking dismissal of respondent's objections. Respondent opposed petitioner's motion and moved for summary judgment based on its objections. Surrogate's Court partially granted petitioner's motion, to the extent of finding that commissions had been properly computed and that the disputed expenses — except fees paid for preparation of the final accounting — were properly paid, partially granted respondent's motion, by disallowing the fee paid for preparation of the final account, and otherwise denied both motions. Respondent appeals.
"In an accounting proceeding, the party submitting the account has the ultimate burden of demonstrating that all the assets of the estate have been fully accounted. If left uncontested, the account stands proved pro confesso, except in as far as it may be patently contrary to law. Where the account is contested, the objectant bears the initial burden of proffering evidence to establish that the account is inaccurate or incomplete, and, upon satisfaction of that burden, the burden shifts to the [fiduciary] to prove, by a preponderance of the evidence, that the account is accurate and complete" (Matter of Jewett, 145 AD3d 1114, 1115-1116 [2016] [internal quotation marks, brackets and citations omitted]). On appeal, respondent argues that Surrogate's Court erred by failing to require that petitioner provide the initial market value of the trust, in finding that petitioner had properly documented calculation of its commissions and in finding an issue of fact with respect to whether the delay in closing the trust required disallowance of trustee's commissions.
Respondent originally objected to commissions and expenses reported for the period prior to decedent's death. However, at oral argument, it conceded that it was no longer making claims based on events that occurred during decedent's lifetime but, rather, was merely seeking a beginning principal balance for the trust. This acknowledgment is consistent with the principle that remainder beneficiaries of a revocable trust lack standing to object to the part of an account that covers the period when the grantor was alive and, therefore, precludes respondent from challenging any transactions that occurred prior to decedent's death (see Matter of Kalik, 117 AD3d 590, 590-591 [2014], lv denied and dismissed 24 NY3d 1199 [2015]; Matter of Malasky, 290 AD2d 631, 632 [2002]; Matter of Andrews v Trustco Bank, Natl. Assn., 289 AD2d 910, 912 [2001]). Thus, the relevant date for the initial value sought by respondent is the date of decedent's death — not the date that the trust was executed. Moreover, we note that, although the account does not expressly set forth the value of the trust on the date of decedent's death, it contains sufficient information — as reported on the numerous schedules related to principal, income, expenses and distributions — from which it is possible to compute the date-of-death value by summing the receipts and positive adjustments and deducting disbursements, expenses and negative adjustments.[FN1]
Respondent objected to the commissions claimed in the account, contending, as relevant here, that the trust agreement did not permit petitioner to compute commissions based on its published fee schedule and, further, that petitioner's calculations were not supported by proper documentation. During the ensuing examination of the fiduciary, John Bresonis, an officer of petitioner who was employed in its Financial Services Department, testified that commissions were computed quarterly based on market values obtained from account statements. Petitioner subsequently submitted an affidavit from Bresonis that attached copies of petitioner's published fee schedules and records showing the market value of the trust at each relevant calendar quarter. In his affidavit, Bresonis further explained how commissions were calculated, [*3]as shown on an attached spreadsheet, and the resulting commission computations correspond to the commissions claimed in the account.
SCPA 2312 (1) provides that "[i]f the will or lifetime trust instrument makes provisions for specific rates or amounts of commissions (other than a general reference to commissions allowed by law or words of like import) for a corporate trustee, or, if a corporate trustee has agreed to accept specific rates or amounts of commissions, a corporate trustee shall be entitled to be compensated in accordance with such provisions or agreement, as the case may be." The trust agreement provides for payment of statutory termination commissions and, in addition, "such annual commissions as may be allowed from time to time by the [l]aws of the State of New York to testamentary trustees and, in any event, a minimum commission as set by the TRUSTEE may be paid" (emphasis added). Surrogate's Court properly concluded that the provision permitting petitioner to establish minimum annual commissions was an express agreement that permits petitioner to calculate annual commissions in accordance with its applicable published fee schedules. Surrogate's Court also engaged in a thorough review of the proof submitted by petitioner, and properly concluded that petitioner had submitted sufficient evidence from its records of the market value of the trust on the relevant dates and that its resulting computation of commissions was proper.
Finally, we further conclude that Surrogate's Court did not err by finding that there was an issue of fact regarding whether petitioner's delay in making final distributions of the trust assets to the beneficiaries was sufficiently egregious to warrant disallowance of trustee's commissions. We reach this conclusion for the reasons set forth in our decision in the related appeal (Matter of Johnson, slip op *3-4). Petitioner's remaining contentions have been examined and found to lack merit.
Lynch, J.P., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: The date-of-death value of the trust as so calculated may be corroborated by comparison to the additional information that petitioner submitted in reply, which shows that the market value of the trust assets was $1,119,292.30 on September 30, 2007 and $1,089,094.36 on December 30, 2007.